GEORGE C. TUDOR v. R. J. BOWEN.

(Filed 4 May, 1910.)

**Negligence—Automobiles—Public Thoroughfares—Reasonable Requirements—Unusual Noises—Frightened Horses.**

> The use of an automobile upon a public thoroughfare imposes upon the chauffer the duty to observe that degree of care in its operation which is commensurate with the risk of danger thereby caused to others; and when the chauffer commences to crank his machine for the purpose of starting in close proximity to harnessed horses standing quietly in charge of a driver, without giving any previous warning, and thereby causes them to run away and inflict the injury complained of, actionable negligence is established.

APPEAL from *Long, J.,* at February Term, 1910, of FORSYTH.

The plaintiff alleged that his team of horses were made to take fright and run away by reason of the negligent management and operation of an automobile by defendant upon the streets of Winston-Salem, whereby plaintiff was damaged.

Upon the pleadings these issues were submitted:

1. Was the plaintiff's property injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff, or his agent, by his own negligence, contribute to the injury to his own property? Answer: No.

3. What damage, if any, is the plaintiff entitled to recover? Answer: $168.

There was a judgment for plaintiff, from which defendant appealed.

The defendant excepted to each of the following paragraphs of the charge of the court and assigned the same as error:

"2. Although the jury may find that there was nothing unusual about the defendant's automobile, and that it did not make any unusual noise, still, if they further find that the defendant knew, or could, by the exercise of that care required of him under the circumstances—that is, by the use of ordinary care—have known that the horses were restless and had been frightened by his automobile, if the jury find as a fact that they were restless and frightened thereby, then it was a wrongful and negligent act for him to have done anything in reference to his automobile which would have been considered by an ordinarily prudent man to have a tendency to increase their fright and cause them to run away; and if the jury find that the defendant, under the circumstances just stated, cranked his machine and started it off, and by the noise made thereby the team was caused to run away, they will answer the first issue 'Yes.'

"3. If the jury should find from the evidence that, in attempting to start the defendant's machine, it made an unusually loud and alarming noise, one calculated to startle or frighten horses of ordinary temper and training, and this condition of the machine was known to the defendant, it was his duty, in operating said machine, to use reasonable prudence in seeing that no horses or animals were about and so situated as, under reasonable circumstances, would be frightened by the starting of the said machine; and if the defendant, knowing that he had a machine which made such an unusual and alarming noise, failed to look around or to regard horses that were frightened in his immediate vicinity, and went on cranking his machine, making such a noise as would reasonably scare horses of ordinary temper and training, and if thereby, as a proximate result, plaintiff's horses were scared and the injury brought about, he would be guilty of negligence, and you will answer the first issue 'Yes.'"

*Manly & Hendren* for plaintiff.
*Watson, Buxton & Watson* for defendant.

BROWN, J., after stating the case: No motion to nonsuit was made and no assignment of error challenges the sufficiency of the evidence upon the issue of negligence. So we have to con-

TUDOR v. BOWEN.

sider only the correctness of the portions of the charge excepted to in view of the evidence adduced on the trial.

In the brief the defendant abandons the first assignment of error and confines his criticisms to the second and third paragraphs of the charge.

The evidence introduced by the plaintiff tends to prove that the defendant was driving his automobile on the streets of Winston-Salem and stopped it for purposes of examination within a few feet of where plaintiff's team of horses were standing harnessed to a surrey and in charge of a competent driver; that the machine could not be seen by the horses, but could be heard by them; that when the machine was being cranked for the purpose of starting, one horse began to prance and show symptoms of fright; that the cranking kept on and did not stop, causing the horses to run away and injure themselves and the vehicle; that the driver when the cranking commenced, called to defendant to 'Wait a minute,' but whether the call was heard or not does not appear. This evidence also tends to prove that the defendant's automobile made a most unusual and loud noise while being cranked up; that "the gear-wheels were loose and made a terrible noise"; that no other machine makes such a fearful noise; that it could have been avoided by using rawhide gearing, but defendant said the price was too high.

Upon this phase of the evidence we think his Honor's charge is supported by generally recognized principles of law.

Negligence is essentially relative and comparative. The legal duty we owe to others is the accepted standard, and that duty is measured by the exigencies of the occasion.

A want of caution to avoid injury, where the duty to exercise caution is incumbent, and a reckless or heedless use of a dangerous agency in a locality where the peril from its use is obvious, constitute breaches of duty which may become, when causing injury, actionable negligence. As has been said, "the term covers all those shades of inadvertence which range between deliberate intention on the one hand and total absence of responsible consciousness on the other." *Cook v. Traction Co.,* 80 Md., 554; *Railway Co. v. Jones,* 95 U. S., 439. The existence of negligence is, therefore, to be sought for in the facts and surroundings of each particular case.

Although the use of automobiles began in recent years, it seems to have caused much litigation, though not in this State. It is the consensus of judicial opinion that it is the duty of the operator of an automobile upon highways and public streets to use every reasonable precaution to avoid causing injury, and this duty requires him to take into consideration *"the character*

of his machine and *its tendency* to frighten horses." *Hanni-gan v. Wright,* 63 Atl. Rep., 234; *House v. Cramer,* 13 Am. and Eng. Annotated Cases, p. 463, note, and cases cited.

The possession of a powerful or dangerous vehicle imposes upon the chauffer the duty of employing a degree of care commensurate with the risk of danger to others engendered by the use of such a machine on a public thoroughfare.

Upon the case as made out by plaintiff we think the defendant is liable for the damage done, upon two phases of the evidence:

1. The proximity of the auto to plaintiff's team when it stopped was such that defendant must have seen the horses and vehicle unless he was either blind or guilty of gross carelessness.

There is evidence, sufficient to go to the jury, that when the defendant began to "crank up," the animals manifested fright, and that defendant, if at all observant, must have seen it, but, instead of stopping his cranking, he continued until his machine started.

It is well settled that it is the duty of an autoist to stop his machine, or to do whatever is reasonably required to relieve persons of peril when he sees a horse is becoming frightened by his machine. *Ind. Springs Co. v. Brown,* 6 Anno. Cases, 656; *Shinkle v. McCullough,* 116 Ky., 960; *House v. Cramer, supra,* and cases cited in notes. This duty is imposed by statutes in many States regulating the use of automobiles, but we think it is easily deducible from elementary principles of the common law. *Long v. Warwick,* 148 N. C., 32.

It was the duty of this defendant, assuming that his machine was a normal one, when he began to "crank up," to keep a watchful eye on the horses standing so close by. It was his duty, when he saw that they were manifesting symptoms of fright, to stop at once, until the horses could be removed. There is evidence that in this respect the defendant failed in his duty.

2. The plaintiff shows by evidence that defendant's machine was not a normal, but a most abnormal, one; that the noise it made when cranking up was something "terrible," to use the expression of one witness. That defendant was fully aware of this, and refused to correct it because of the incidental expense, is testified to by the machinist Hamlin.

His Honor might well have told the jury that to crank up such a defective and abnormal machine in close proximity to a pair of horses, without giving the driver notice to remove them, is *per se* negligence.

This imposes no great burden upon those who use the public

highways even with the best equipped and safest machines. To require less would render the highways of the country dangerous to the lives and property of those who daily use them.

We are of opinion that his Honor correctly and fairly submitted the case to the jury in a charge free from error.

No error.