C. H. CURRY v. F. H. FLEER.

(Filed 15 November, 1911.)

1. **Public Highways—Motor Vehicles—Operation—Declaratory Statutes—Interpretation.**

The Laws of 1909, ch. 445, requiring a person operating a motor vehicle "to slow down to a speed not exceeding eight miles an hour and give reasonable warning of its approach and use every reasonable precaution to insure the safety of" a horse being ridden or driven, etc., upon the highway upon which the motor is being driven, etc., with the exception of establishing a speed limit, is to a great extent an embodiment of general principles of law applicable to motor vehicles when operated on the highway and in places where their use is likely to be a source of danger to others. *Gaskins v. Hancock,* 156 N. C., 56; *Tudor v. Bowen,* 152 N. C., 441, cited and applied.

2. **Same—Requirements.**

The maximum speed limit of eight miles an hour for the running of motor vehicles upon the highways in approaching horses

CURRY v. FLEER.

being ridden or driven thereon, etc., prescribed by the Laws of 1909, ch. 445, does not contemplate or intend that the specified limit is always permissible; for one driving a machine of this character is charged with notice of things which he observes or could observe in the exercise of proper care, having regard to the nature of the vehicle he is operating and its tendency to frighten animals; and not infrequently it may become his duty to move at a much slower speed, or stop altogether if conditions so require.

3. Same—Negligence—Evidence—Nonsuit.

In an action for damages for personal injury received by reason of the team plaintiff was driving becoming frightened from a motor vehicle approaching from the rear, there was evidence tending to show that the speed of the automobile greatly exceeded the limit prescribed by the Laws of 1909, ch. 445, and that the machine was upon the plaintiff's team without adequate warning and without giving him "any chance to hold on to his horses": *Held*, sufficient to go to the jury upon the question of defendant's actionable negligence, not so much and of itself that the speed limit was exceeded, but tending to show the defendant's negligence in not doing what the circumstances reasonably required for the plaintiff's safety; and upon conflicting evidence, a motion to nonsuit should be denied.

4. Evidence—Objections and Exceptions—Appeal and Error—Harmless Error.

Over defendant's objection, plaintiff was permitted to ask the witness of the former if he had not sold his land to the defendant at a big price: *Held*, if on the facts the answer had a reasonable and natural tendency to create a bias in defendant's favor it was relevant; and if otherwise, it would be harmless and not reversible error.

APPEAL from *Lyon, J.,* at April Term, 1911, of DAVIDSON.

Civil action to recover damages for injuries caused by alleged negligence of defendant in driving his automobile.

There was evidence on part of plaintiff tending to show that on 7 December, 1909, on the road about one and a half miles from Thomasville, plaintiff was driving a two-horse wagon, loaded with 100 chairs, when his horses took fright at defendant's automobile, and, getting beyond his control, ran the wagon against a telephone post, whereby plaintiff was thrown to the ground and received painful physical injuries; that the·

automobile, driven by defendant, approached from behind at
a speed of fifteen or twenty miles an hour; sounded the warn-
ing signal when only 25 yards back, and came so suddenly on
witness that he had no chance to get control of his team and
prevent the running. Speaking to this question, the witness
said: "Just passed right by me all at once and didn't give
me any chance to hold on to the horses, trying to do all I could
with them. If I had had warning in time, I might have pre-
vented the horses from running away."

The evidence of defendant tended to show that he approached
at a speed of twelve miles, reduced to eight when nearing the
team; gave the ordinary and usual signals 100 feet back, and
passed without observing any sign of fright in the horses or of
any change or disturbance in the movement of the team, etc.
There was further evidence on part of defendant tending to
show that the horses were young horses, unused to the road,
and that there was no default on part of defendant in the use
and operation of the machine or in failing to give the proper
signal.

The question of defendant's negligence was submitted to the
jury, and the following verdict rendered:

"Was the plaintiff injured by the negligence of the defendant,
as alleged in the complaint? Answer: Yes.

"What damages, if any, is plaintiff entitled to recover?
Answer: $500."

Judgment on the verdict, and defendant excepted, alleging
for error, chiefly, the refusal of the court to order a nonsuit.

*Phillips & Bower and McCrary & McCrary for plaintiff.*
*E. E. Raper and A. F. Sams for defendant.*

HOKE, J., after stating the case: The General Assembly of
1909 made extended regulation in reference to the ownership,
operation, and use of the automobile. Laws 1909, ch. 445,
Pell's Supplement, secs. 3876, a to t, inclusive, and on matters
more directly relevant, the statute provides as follows: "Upon
approaching a horse or horses or other draft animals, being
ridden, led, or driven thereon, a person operating a motor
vehicle shall slow down to a speed not exceeding eight miles

an hour and give reasonable warning of its approach and use every reasonable precaution to insure the safety of such person or animal, and in case of a horse or horses or other draft animals, to prevent frightening the same." With the exception of establishing speed limits, this legislation is to a great extent an embodiment of the general principles of law applicable to these motor vehicles when operated on the highway and on places where their use is likely to be a source of danger to others; principles recognized and applied in two recent cases before the Court: *Gaskins v. Hancock,* 156 N. C., 56; *Tudor v. Bowen,* 152 N. C., 441.

Speaking to the duties incumbent upon chauffeurs and others driving these cars, in *Tudor's case, supra, Associate Justice Brown* said: "Although the use of automobiles began in recent years, it seems to have caused much litigation, though not in this State. It is the consensus of judicial opinion that it is the duty of the operator of an automobile upon highways and public streets to use every reasonable precaution to avoid causing injury, and this duty requires him to take into consideration 'the character of his machine and its tendency to frighten horses.' *Hannigan v. Wright,* 63 Atl. Rep., 234; *House v. Cramer,* 13 Am. and Eng. Annotated Cases, p. 463, note, and cases cited. The possession of a powerful or dangerous vehicle imposes upon the chauffeur the duty of employing a degree of care commensurate with the risk of danger to others engendered by the use of such a machine on a public thoroughfare." And it may be well to note that the legislation referred to establishes, as a rule, a maximum rate of speed "not exceeding eight miles an hour," etc., and in doing so it is not at all contemplated or intended that the specified limit is always permissible. The chauffeur or other driving a machine of this character on the public highway is charged with notice of things which he observes or could observe in the exercise of proper care, having regard to the nature of the vehicle he is operating and its tendency to frighten animals, and not infrequently it may become his duty to move at a much slower speed, and stop altogether if conditions so require. This, too, is in accord with approved precedent (*Christy v. Elliott,* 216 Ill., p. 31), and is expressly

recognized in other sections of the statute, notably Pell's Supplement, 3876m, 3876n, 3876p, and 3876r, 3876s, the last citation being in terms as follows: "Nothing in the general law shall be construed to curtail or abridge the right of any person to prosecute a civil action for damages by reason of injuries to person or property resulting from the negligence of the owner or operator, or his agent, employee, or servant, of any motor vehicle, or resulting from the negligent use of the highway by them· or any of them."

Applying the principle, the case was clearly one for the jury. The grievance alleged on part of plaintiff, being not so much and of itself that the speed limit was exceeded—a limit established principally to lessen the danger of collision—but because, by reason in part of exceeding the speed limit, the machine was upon the plaintiff's team *without adequate warning*; that at twenty miles per hour and a signal at 25 steps behind, to use the plaintiff's own language, the vehicle "just passed right by me all at once and didn't give me any chance to hold on to my horses, trying to do all I could." True, there is evidence on defendant's part in contradiction of this testimony, but, under a correct charge, the jury have accepted the plaintiff's version, and, in our opinion, an actionable wrong is clearly established.

Objection was further made that the court allowed plaintiff to ask a witness who testified for defendant if he had not sold his land to defendant at a big price. The answer was admitted as tending to show a bias in defendant's favor. If on the facts the answer had a reasonable and natural tendency to create a bias in defendant's favor, it was relevant, and if otherwise it should be treated as harmless, and certainly not held for reversible error. We find no error in the record, and the judgment in plaintiff's favor must be affirmed.

No error.