PEASE, Respondent, v. COCHRAN, Appellant.

(173 N. W. 158).

(File No. 4541. Opinion filed June 24, 1919. Rehearing denied August 15, 1919).

**1.  Negligence—Injury by Motor Car—Complaint, Negligent· Loading of Automobile, Excessive Speed, Failure to Stop Car— Pleading Construed—Recovery, Right Of.**

A complaint, in a suit to recover damages, for defendant's negligence in frightening plaintiff's horse, resulting in her· injury, which alleges that the injuries and damages were · directly and proximately caused by the unlawful, careless and negligent act of defendant in driving his automobile, loaded in the manner aforesaid at an excessive speed on the highway, and in failing to stop· when plaintiff's horse showed signs of fright, etc., charges three acts of negligence: (1) improper and negligent manner of· loading the automobile; (2) excessive rate of speed by defendant; (3) defendant's failure to stop car when it became apparent to him that plaintiff's horse was becoming frightened. Held, further, that either of these acts, if shown to have been proximate cause of the injury, would entitle plaintiff to recover.

**2.  Negligence—Automobile Driver Frightening Plaintiff's Horse— Chiffonier, Improper Loading in Automobile, Whether Actionable Negligence.**

Where, in a suit for damages for injuries caused by defendant's frightening plaintiff's horse, causing it to run away, thereby inuring her, it appeared that defendant was carrying in the rear of his car a chiffonier four feet high, resting on car floor and against rear seat cushion, plaintiff's testimony being that it extended three or four feet above the seat back and appeared· to be white, other witnesses testifying it did not extend more than eighteen inches above the seat, defendant testifying the only other article in the car was a jar of butter beside him on front seat, other witnesses testifying there was a sack or two of grain on front seat and a ladder tied or strapped to outside of car; held, these facts alone would not constitute actionable negligence of defendant in loading his car; that to constitute such negligence there must have been something about the appearance of the car, or the manner in which it was loaded, suggesting to an ordinarily prudent man that· it would terrify or frighten an ordinary horse, i. e. one accustomed to automobiles on the road.

**3.  Negligence—Injury from. Automobile Driver's Frightening Plaintiff's Horse—Excessive Speed, Instruction Re, Outside of Evidence, Effect.**

Trial court, in a suit to recover damages for negligence

caused by defendant's frightening plaintiff's horse while approaching her buggy with a loaded automobile, instructed that under the laws of this state persons operating motors on a public highway shall drive same in a careful and prudent manner and at such rate of speed as not to endanger the property of another, or the life or limb of any person, that a rate of speed in excess of 25 miles an hour is presumptive evidence of driving at an unlawful and imprudent rate of speed, and that if jury find defendant was driving in excess of 25 miles per hour they should find defendant was not careful and prudent, etc. **Held**, that such instruction, while perhaps correct as an abstract proposition of law, was erroneous, there being no evidence showing defendant was driving in excess of 25 miles per hour, nor that the rate of speed he was driving contributed to the cause of the accident. **Held**, further, that, it not appearing that, up to the time when defendant stopped his automobile after driving at a certain speed, plaintiff's horse had seen it, such instruction was immaterial; and it was error to admit evidence showing defendant's rate of speed up to that time.

4. **Negligence—Automobile Driver's Frightening Horse—Sudden Fright, Stopping Car, Whether Timely, Evidence Re, Insufficiency—Defendant's Duty Defined.**

In a suit for damages resulting from defendant's negligently driving an automobile loaded with a white chiffonier and other articles, thereby frightening plaintiff's horse, causing it to run away, and injuring plaintiff, its driver, **held**, that evidence showing substantially that plaintiff's horse did not jump nor rear nor turn sideways until it suddenly stopped and backed into buggy shafts, then wheeled and upset the buggy while the automobile was still 300 feet or more away, it not appearing the horse showed signs of fright "until she came back in the shafts," that "it was all just one spasm," defendant's testimony being substantially similar, except that defendant testified the horse did not shy or show signs of fright until he was within 3 times the length of the car from the horse, when he stopped his car as quickly as possible—is insufficient to show defendant's negligence for not stopping his car before the accident occurred; that while it was his duty when horse showed signs of fright to at once stop the car, whether he was signalled to do so or not, he was under no obligation to stop it until horse showed signs of fright; evidence clearly showing there was insufficient time to stop it after horse showed signs of fright and before buggy was upset; and it was immaterial as to the distance of the car away from the horse at the time.

Appeal from Circuit Court, Brookings County. Hon. W. N. SKINNER, Judge.

Acton by Eva Pease, against Robert Cochran, to recover damages for injury resulting from defendant's frightening plaintiff's horse. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed.

*Cheever & Cheever, C. O. Trygstad,* and *Olaf Eidem,* for Appellant.

*Hall, Alexander & Purdy,* for Respondent.

(4) To point four of the opinion, Appellant cited: Pollock on Torts, 36; Turner v. Bennett, 142 N. W. 999.

POLLEY, J. While the plaintiff was riding in a buggy along a highway, in Brookings county, her horse ran away, upsetting the buggy and throwng the plaintiff to the ground, thereby causing her serious, and probably permanent, injury. Claiming the runaway was caused by the negligent manner in which defendant was operating a motor car on said highway, plaintiff brought this action to recover damages caused by said injury. She recovered judgment and defendant appeals.

[1] The negligence attributed to defendant is charged in the plaintiff's complaint in the following manner:

"That plaintiff's said injuries and damage were directly and proximately caused by the unlawful, careless, and negligent act of said defendant in so driving his said automobile, loaded in the manner aforesaid, at an excessive speed on the highway, and in failing to stop when the horse driven by plaintiff showed signs of fright and of being unmanageable."

This allegation charges three distinct acts of negligence: First, the improper and negligent manner of loading the automobile; second, the excessive rate of speed at which defendant was driving at the time of the injury; and, third, the failure of defendant to stop said car when it became apparent to him that plaintiff's horse was becoming frightened. Either of these acts, if shown to have been the proximate cause of the injury, would entitle plaintiff to recover.

[2] To prove the first act of negligence, it was shown that, at the time of the accident, defendant was carrying in his car an article of furniture, commonly known as a chiffonier. Said chiffonier was 4 feet high, 37 inches wide, and 18 inches deep. It was in the rear of the car, resting upon the floor of the car

and against the cushion of the rear seat. It was brown, and had a polished surface. Plaintiff saw this piece of furniture in defendant's car at the time of the accident, and testified that it extended 3 or 4 feet above the back of the seat, and that it appeared to be white; but other witnesses who saw it testified that it did not extend more than about 18 inches above the back of the seat. From the height of the chiffonier and the manner in which it was riding in the car, this latter estimate must be approximately correct. There was some conflict n the testimony as to what other articles were in the car. Defendant testified that the only other article in the car was a ten-pound jar of butter that was beside him on the front seat. One or two witnesses who saw the car after the accident testified that there was a sack or two of grain on the front seat, and that there was a ladder some 12 feet in length, tied or strapped to the outside of the car. This may be a correct description of the appearance of the car, and it may be a fact that there was something about the appearance of the articles in said car that frightened plaintiff's horse; but these facts alone do not constitute actionable negligence on the part of the defendant.

In order to constitute actionable negligence on this branch of the case, there must have been something about the appearance of the car or the manner in which it was loaded that would suggest to an ordinarily prudent man that it would terrify or frghten an ordinary horse: i. e., a horse that had become accustomed to automobiles on the road. There are horses that would take fright at any automobile, regardless of whether it was loaded at all; but people are not required to refrain from using automobiles on the highway to avoid frightening such horses, and a person taking such horse on the highway would do so at his own peril. On the other hand, there are horses that would not take fright at an automobile, no matter how it might be loaded or what its appearance might be. But this fact would not justify a person in going upon a highway with an automobile so loaded, or having such an appearance, that it would be calculated to frighten or terrify an ordinary horse.

In this case, we do not believe that defendant's automobile was loaded in such a manner as to suggest to a reasonably prudent person that it would frighten or terrify an ordinary horse.

The article of furniture that defendant was hauling was one that he had a right to have in his possession and to move from one place to another, if he so desired, and to move it in an automobile if that were his most convenient mode of conveyance. To hold otherwise would be to prohibit him from moving such article of furniture over the public highway, unless he did so at a time when he knew there would be no horse-drawn vehicles on the road.

[3] Upon the question of excessive speed, the trial court charged the jury as follows:

"You are hereby instructed that, under the laws of the state of South Dakota, 'Every person operating a motor vehicle on a public highway of this state shall drive the same in a careful and prudent manner and at a rate of speed so as not to endanger the property of another, or the life or limb of any person; provided, that a rate of speed in excess of 25 miles an hour shall be presumptive evdence of driving at a rate of speed which is not careful and prudent in case of injury to the person or property of another.'

"You are instructed that, if you shall find by a preponderance of the evidence that at the time of the accident which is the subject of this action the said defendant was driving his car at a rate of speed in excess of 25 miles per hour, then and in that case you would be justified in finding that the said defendant was not careful and prudent in the operation and management of his automobile."

The giving of this instruction is assigned as error. While said instruction may be correct as an abstract proposition of law, it has no application to the facts in this case. There is no evidence to show that the defendant was driving his car in excess of 25 miles per hour at the time of the accident, nor that the rate of speed at which he was driving contributed to the cause of the accident. One witness, who met defendant just prior to the accident, testified that, as defendant approached the witness, he was driving at a rate of about 25 miles per hour, but it is an admited fact that, before the witness passed defendant, defendant had stopped his car and waited while the witness crossed a bridge that was between him and the defendant. The defendant then crossed the bridge, going towards the plaintiff, who was

some 40 to 60 rods from the bridge. There is no evidence to show that plaintiff's horse had seen defendant's car up to that time. The rate of speed at which defendant had been traveling was therefore wholly immaterial; and it constituted error on the part of the trial court to permit this evidence to go to the jury. There is no evidence to show that, from the time the defendant crossed the said bridge until he met the plaintiff his car exceeded a speed of 12 miles per hour.

[4] As to whether defendant exercised proper diligence in stopping his car after it became evident that plaintiff's horse was frightened, plaintiff testified that her horse began to prick up its ears and to act frightened when defendant's car was still some 500 or 600 feet away; but it did not jump nor rear nor turn to the right nor to the left until it was within 300 or 400 feet from the car, when it suddenly stopped and backed into the shafts of the buggy, then threw its head to the right, then whirled to the left and upset the buggy; that the car was still 300 feet, or more, away when this occurred; that this all happened so quickly she did not have time to gather up the lines; that "it was all just one spasm; * * * there wasn't any first and second spasm"; that the horse did not go ahead any "between the time she first threw herself back in the shafts and the time she turned abruptly to the left and upset us." Plaintiff's mother, who was in the buggy with plaintiff at the time of the accident, testified that she did not notice that the horse showed any signs of fright "until she came back in the shafts." A witness on behalf of plaintiff, who was in the road at a distance of about 60 rods behind the plaintiff and who saw the accident, testified that—

Plaintiff's horse "just started to shy off a little, but just at pretty near the same time the whole thing happened, the buggy went over just, you might say, in a twinkling, you might call it, when this horse pulled this other way. You might say there was no length of time between. It all happened in a very short time from the time he began to shy, I am pretty sure. I had the idea, by the looks of things, she had turned just a little to the right. I did not think it was jumping at that time, not at that time."

Another witness testified:

"I noticed the horse turn a little out to the east and then

whirl right around, facing the south across the road, and the buggy was upset and the horse faced the south. * * * Before the horse turned to the right, I noticed nothing to indicate that the horse was stopping, nor anything to indicate that it was settling back in the shafts. * * * The whole thing happened as quick as you can tell about it."

The testimony of the defendant does not materially differ from that of plaintiff on this point, except that defendant testified that the horse did not shy nor show signs of fright until he was within a distance of three times the length of his car from the horse, and that he then stopped his car as quickly as possible.

[6] Under these circumstances, negligence cannot be imputed to defendant because he did not stop his car before the accident occurred. When the horse showed signs of fright, it was defendant's duty to at once stop the car, whether he was signaled to do so or not; but he was under no obligation to stop the car until the horse showed signs of fright, and the evidence clearly shows that there was not sufficient time to stop the car after the horse showed signs of fright and before the buggy was upset, or that anything defendant could have done would have prevented the accident. Therefore it is immaterial whether he stopped the car immediately, and it is immaterial whether the car was 300 feet, or only three times the length of the car from the horse when the horse first showed signs of becoming frightened.

Upon a careful examination of the whole record, we are of the opinion that the evidence is insufficient to support the verdict, and the judgment must be reversed.