## SAN ANTONIO MACHINE & SUPPLY CO. v. McKINLEY. (No. 6702.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 22, 1922. Rehearing Denied March 22, 1922.)

1. Highways ⬅184(2)—Evidence in a suit for injuries in a collision held to show that the proximate cause was the shying of plaintiff's mules, not defendant's alleged negligence as to lights on his automobile.

In a suit for personal injuries sustained in a collision with defendant's automobile and plaintiff's buggy drawn by a team of mules, evidence *held* to show that the proximate cause was the shying of the mules due to a passing train, and not defendant's failure to have lights on the automobile, the sole negligence alleged.

2. Trial ⬅351(5)—Failure to submit issues in collision case as to whether defendant's automobile had lights held error.

Where in a suit for injuries in a collision between a buggy wherein plaintiff was driving and defendant's automobile when her mules shied because of a passing train, and the only negligence alleged was defendant's failure to

have lights on his automobile, it was error to fail to submit the issues as to operation of the automobile without lights and as to whether the mules took fright and suddenly shied and as to whether such shying was the proximate cause of the collision, though negligence and contributory negligence were in a general way presented by special issues.

**3. Damages ⚮43—Expenses for tours to regain health not a proper measure of damages.**

Damages in personal actions cannot be measured by the amount paid out for tours to regain health.

Appeal from District Court, Frio County; C. C. Thomas, Judge.

Action by Minnie McKinley against the San Antonio Machine & Supply Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Taliaferro, Cunningham & Moursund, of San Antonio, and S. T. Dowe, of Pearsall, for appellant.

Thos. H. Ward, Jno. L. Pranglin, and Magus Smith, all of Pearsall, for appellee.

FLY, C. J. Appellee instituted this action against appellant to recover damages arising from personal injuries inflicted upon her through a collision between an · automobile belonging to appellant and driven by its employés and a buggy drawn by two mules in which appellee was riding between Melon and Pearsall. The only ground of negligence alleged was that appellant was operating its car at night, upon a public road, without lights, and to emphasize this it is alleged:

"That the said collision and consequent injury to this plaintiff was directly and proximately caused by the carelessness, negligence, and recklessness of the said employé in operating and driving said automobile upon the said public highway in the nighttime without lights."

The court placed seven special issues before the jury, and upon the answers rendered judgment for appellee in the sum of $5,000.

The evidence in this case shows that appellee was in company with Willie Harrington in a buggy drawn by two mules, which the latter was driving, on their way from Pearsall to Melon, Frio county, Tex. They were traveling along a public road which ran along and within 30 feet of the International & Great Northern Railway track when the collision occurred. The undisputed testimony shows that appellee and her companion were going south, and the automobile of appellant, with two men, P. H. Seltzer and A. A. Wilke, in it, who were employés of appellant, was going north. The right-hand side of the road from the position of appellee was nearest the railway track, and a fence was on the opposite side of the public road, which was the right-hand side so far as the automobile was concerned. The driver of the mules sat on the right of the buggy, and the driver of the automobile on the left of his vehicle. Immediately before the collision a train going north passed the buggy, the headlight blinding its occupants, so that they could see nothing in the road, and excited the mules so that they shied to their left, and the collision occurred just after the locomotive passed the buggy. Appellee swore that the car had no lights on it at the time of collision, but that it was a moonlit night. There were no lights on the buggy. She testified that for at least a quarter of a mile before the engine passed she was so blinded by its headlight that she could not see the mules, but that she was looking at the train, and not at the road or the team. She did not know whether the mules were frightened or not.

Harrington, the only witness for appellee besides herself as to the collision, testified that he was driving the mules, that the engine passed, and that the headlight blinded him so he could not see the approaching automobile. He took no precaution as to other vehicles, but was "just driving there, blind, without being able to see, and no light on my buggy, I just continued down the road at a trot." He claimed he was about the center of the road, but said of the mules:

"When they got scared at the train, when that engine came dashing by, the mules jumped over to the left of the road."

He stated:

"They shied over to the left, away from that bright light. * * * The mules were both on that side. * * * It is true that these mules shied to the left, and just at that moment came the collision."

As to the lights on the automobile he swore:

"I say this automobile had no lights on it after the buggy run into it, and didn't see any before either."

After the collision both mules were to the left of the tongue of the buggy. The tongue pierced the wind shield and struck the man in the automobile sitting at the right of its driver. The right front wheel of the buggy was broken.

The testimony of appellant showed that there were lights on the automobile, and that it was traveling on its right-hand side of the road, that the buggy and mules were seen by the occupants, and that just as the engine passed the buggy the mules shied to their left in front of the automobile, and that it was stopped instantly. The uncontradicted testimony showed that a vehicle could have gone much closer to the railroad track than did the buggy. After the accident appellant's car passed between the buggy and the railroad, as did other automobiles. The tongue of the buggy struck the left-hand side of the radia-

⚮For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tor. The driver swore that he did not stop his car when he first saw the mules, because they were not in front of him, but as he approached them they shied in front of him. He was corroborated by Wilke and contradicted by no one.

It was alleged in the petition that the occupants of the buggy were blinded by the light of the locomotive and deafened by the noise, and "that just as the locomotive engine dashed by them and just prior to the collision it was with much difficulty that her companion held the mules they were driving in the main traveled road, the mules having shied and attempted to turn to the left, either through fright of the passing engine, or the approaching automobile, or from some other cause the plaintiff knew not which." It was not alleged that the automobile was on the wrong side of the road or that it was moving at an illegal speed, but the sole alleged ground of negligence was a failure to have lights on the automobile.

All of the evidence tends to show that the mules "shied" to their left just as the collision occurred. That they shied evidently meant that they moved away from the engine towards the other side of the road. As pointedly stated by Maxwell, who testified for appellant:

"I never considered that a horse can shy and sit down in his tracks; suppose he must move from one side to the other when he shies."

As Webster puts it, the verb "shy" means:

"To start suddenly aside through fright or suspicion; said especially of horses."

The word is always used in that sense; that is, to swerve from the path being pursued to the right or left. All of the testimony showed that the mules shied to the left, as said by Harrington, "from the bright light," and he admits that both of them got to their left side of the road. There is but one conclusion to reach from the testimony, and that is the collision would not have occurred if the mules had not shied to their left.

[1] All the testimony tends to show that the failure to have lights on the automobile could not have been the proximate cause of the accident, because the occupants of the car swore that they saw the mules before the accident and could have stopped the car had there been any danger of a collision, and it was not only alleged that the eyes of the occupants of the buggy were so blinded that they could not see the car, but they swear to that fact. It follows that, no matter how bright lights may have been carried by the car, its occupants could not have seen the mules and buggy any clearer, nor could such lights have lifted the blindness from the eyes of the occupants of the buggy occasioned by the glaring headlight of the locomotive. It is clear that there is no causal connection between the failure to have lights on the automobile and the collision. The shying of the mules seems to have been the proximate cause of the collision.

The court in the charge avoided informing the jury what the grounds of negligence alleged in the petition were, not even being positive as to whether there was one or more, for in the statement of the court in the charge, in speaking of the negligence, he says, "which alleged act or acts of negligence are set out in plaintiff's second amended petition," and in the first issue the jury was asked:

"Was the driver of defendant's car guilty of negligence in the manner alleged in plaintiff's second amended original petition?"

The question of contributory negligence was presented in even a more general way, although appellant sought to apply the question to the facts. There was evidence to sustain the facts sought to be presented on contributory negligence because the whole testimony showed that, although blinded and deafened, appellee and her driver kept their regular gait and made no effort to minimize the danger from approaching vehicles. The train with its bright headlight was seen coming for a long distance, but no precautions were taken, although the driver was experienced and must have known the traits of mules well enough to know that they would shy, and go inevitably towards the side furthest from the railroad when the engine passed.

Appellant sought to confine the grounds of negligence to those alleged by appellee and to grounds depended on for showing contributory negligence through the following issues, which were refused:

"Question No. 1. Did the defendant, San Antonio Machine & Supply Company, through its agent, on or about the 21st day of August, 1920, operate an automobile on the public highway in the county of Frio along the Pearsall-Laredo road without two lights burning on the front of said car and one light in the rear?

"Question No. 2. Did the mules driven by Willie Harrington on or about August 21, 1920, along the Pearsall-Laredo road take fright at a locomotive or some other object and suddenly shy or jump to the left of the road along which they were traveling?

"Question No. 3. Did the shying of the mules to the left proximately cause the collision between the buggy to which said mules were hitched and the automobile approaching from the opposite direction?".

[2] These were the concrete issues in the case, and should have been passed upon by the jury. Question 1 presented the only issue of negligence plainly and clearly, and questions 2 and 3 presented issues of contributory negligence raised by pleadings and proof.

[3] The railroad fare paid by appellee to Del Rio from San Antonio should not have

been considered as a part of the damages. Damages cannot be measured by amount paid out for tours to regain health.

The judgment is reversed, and the cause remanded.