# WAYNE MORTENSON, BY FRED MORTENSON, GUARDIAN OF HIS ESTATE, AND ANOTHER v. ARNOLD HINDAHL AND ANOTHER.

77 N. W. (2d) 185.

May 18, 1956—Nos. 36,717, 36,718.

*Mahoney & Mahoney,* for appellants.
*C. U. Landrum,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Actions by Fred Mortenson as father and natural guardian of Wayne Mortenson, a minor nine years of age, for injuries sustained by the latter; and on his own behalf for special damages incurred or expended because of such injuries. The injuries were sustained by Wayne on June 25, 1953, about 5 p. m., on State Highway No. 59, a few miles north of Callaway. They resulted from an accident in which a pony, upon which he was riding, was struck and killed by a 1948 Ford automobile driven by defendant Dorothy Hindahl and owned by her husband, Arnold Hindahl.

The jury returned verdicts in behalf of Wayne in the sum of $10,421.40 and in behalf of Fred Mortenson in the sum of $3,643.80. Defendants appeal from judgments entered after the court denied their motion for judgment notwithstanding the verdicts. They contend that as a matter of law the evidence established (1) that Dorothy Hindahl was free from negligence proximately causing the accident; and (2) that Wayne's contributory negligence was the sole proximate cause thereof.

Viewed in the light most favorable to plaintiff, the evidence established that on June 25, 1953, at about 5 p. m., Dorothy Hindahl,

accompanied by her husband and two children, was driving the Ford in a southerly direction on State Highway No. 59 somewhat north of Callaway; that the day was clear and the highway dry; that just prior to the accident she had an unrestricted view for approximately one-half mile ahead; that she saw the pony "coming fast; running" with a rider approaching on the east shoulder of the highway about one-quarter of a mile away; that the pony was then galloping with its head held high so that she could not discern whether it was ridden by a child or an adult; that she called it to the attention of her children in the rear seat; that as the pony approached it kept "running" fast and when it was about 50 feet south of them, without warning, it "shot" across the highway in front of the Ford; that the Ford had been traveling about 50 miles per hour; that she had not attempted to decrease its speed until the pony started to cross in front of them; and that then she had put on the brakes but had not turned to the left or right to avoid striking the pony because she did not know in which direction it would run.

There was testimony that after the collision Wayne was found unconscious some 27 feet from the west edge of the concrete; that the pony, which weighed in excess of 600 pounds, was approximately 90 feet south of that point, partially on the west shoulder of the highway; and that the car had left skid marks on the pavement extending some 40 to 50 feet back from the place of collision.

In addition to the foregoing, Mrs. Andrew Mortenson, an aunt of the injured boy, testified that on the night of the accident at the hospital where Wayne had been taken, Mrs. Hindahl had stated in her presence that her son had seen the pony and had called out, "Look out, Mother, you're going to hit the horse," and that the children had then jumped to the bottom of the floorboards. Mrs. Fred Mortenson, mother of Wayne, testified that on the day after the accident Mrs. Hindahl had also stated that "the pony was coming at a full gallop down the highway," and that, "It looked to me as if the boy had lost control of the pony."

With reference thereto Mrs. Hindahl testified that it was not until the pony was "right in front of our car" that her son had shouted,

"We're going to hit it." When asked if she had made statements attributed to her by Mrs. Fred Mortenson, she replied, "Maybe I did; but I don't remember saying it."

■ Ordinarily a motorist is under duty to exercise reasonable care to avoid injuring animals on the highway, Tyler v. Hoover, 92 Neb. 221, 138 N. W. 128; 60 C. J. S., Motor Vehicles, § 411, but in meeting and passing a horseback rider, he is under no special duty to take steps to avoid a collision therewith unless the horse shows signs of fright or that its rider has lost control of it. Harris v. Hicks, 143 Ark. 613, 221 S. W. 472; Pease v. Cochran, 42 S. D. 130, 173 N. W. 158, 5 A. L. R. 936; Tudor v. Bowen, 152 N. C. 441, 67 S. E. 1015, 30 L.R.A.(N.S.) 804. If the horse turns suddenly into the path of the motorist so quickly that the latter cannot avoid striking it, he is absolved from negligence as a matter of law. Pease v. Cochran, *supra;* 5 Am. Jur., Automobiles, § 266.

■ Whether there was negligence on the part of Mrs. Hindahl proximately causing the accident here accordingly would depend upon whether the evidence would support a finding that she had observed that the pony was out of control in sufficient time to take some precautionary measure such as decreasing her speed or turning or stopping so as to avoid coming in contact with it. The principal support for such a finding would be in the testimony of Mrs. Hindahl that, when she first observed the pony coming toward her one quarter of a mile away, it was "coming fast; running" with its head held so high as to partially obscure its rider; that her son had warned her that she was going to "hit the horse" when there was still sufficient time for the boy to thereafter jump down on the floorboards of the car; and in the testimony of Mrs. Fred Mortenson, not denied by Mrs. Hindahl, that the latter had stated that she had observed the pony "coming at a full gallop down the highway" and that "it looked * * * as if the boy had lost control of the pony."

The fact that after such observations Mrs. Hindahl had failed to slacken her speed of 50 miles per hour; to turn to the left or right; or to bring the car to a stop—precautionary measures which a jury might find a person acting with reasonable care should then have

taken—would seem to adequately support a finding of negligence on her part proximately causing the accident. See, Carpenter v. Birkholm, 242 Minn. 379, 65 N. W. (2d) 250; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320.

■ Defendants contend that the only evidence in support of the finding of defendants' negligence is the testimony of Mrs. Andrew Mortenson, Wayne's aunt, and Mrs. Fred Mortenson, his mother, as to the admissions made to them by Mrs. Hindahl. Admissions of this kind, they assert, standing alone are insufficient to support a finding of negligence, citing Binewicz v. Haglin, 103 Minn. 297, 115 N. W. 271, 15 L.R.A.(N.S.) 1096, in support of this claim. In that case this court determined merely that an admission of defendant, testified to by plaintiff's wife, to whom accurate understanding was difficult, and concerning facts not within defendant's personal knowledge, was insufficient in itself to support a finding of negligence. The general rule relative to admissions, which appears to be applicable here, is that if they are made by a party to the litigation they are substantive evidence of the fact admitted. Lovel v. Squirt Bottling Co. 234 Minn. 333, 48 N. W. (2d) 525. This rule has been applied to negligence cases on many occasions. E.g., Lovel v. Squirt Bottling Co. *supra;* Litman v. Peper, 214 Minn. 127, 7 N. W. (2d) 334. The fact that such an admission may be testified to by an interested party or by a person in close relationship to the litigant would affect the weight to be accorded it but not its admissibility. Binewicz v. Haglin, 103 Minn. 297, 115 N. W. 271; Litman v. Peper, *supra;* Lovel v. Squirt Bottling Co. *supra;* 7 Dunnell, Dig. (3 ed.) § 3428.

Further, the admissions charged to Mrs. Hindahl here find substantial corroboration in her testimony that, when she first saw the pony, "it was coming fast; running" toward the car; that it was "coming at a full gallop" with its head held high; and that she had been warned by her son that the car was about to strike it. Their weight is further increased by Mrs. Hindahl's admission that "maybe" she made the statement attributed to her by Mrs. Fred Mortenson. When all such evidence is considered, we are compelled

to conclude that it is adequate to support the jury's finding on the issue of defendant's negligence.

■ We do not feel that the evidence is such as to compel a finding that Wayne was guilty of negligence proximately causing the accident as a matter of law. The evidence indicates that prior to the accident Wayne, nine years of age at the time, may have lost control of the pony so as to be unable to guide its course. There is nothing whatever to indicate that he turned or drove it into the pathway of the Ford—a course which might be suicidal. The rule is well established that a child is required to exercise only the degree of care which may be reasonably expected of a child of his age, intelligence, and experience. Warning v. Kanabec County Co-op. Oil Assn. 231 Minn. 293, 42 N. W. (2d) 881. It has frequently been held that in situations involving an uncontrollable horse the question as to whether the conduct of its adult rider was negligent is one for the jury. Button v. Frink, 51 Conn. 342, 50 Am. R. 24; 40 C. J. S., Highways, § 244. Much more so would this be true when the question of negligence relates to the conduct of a boy of the age of Wayne. It is only in cases where but one conclusion can reasonably be drawn from the evidence that the issue of contributory negligence becomes a question of law for the court. Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327. That this is not such a case seems clear.

The judgments appealed from are affirmed.

Affirmed.