Arthur Lewis GREEN, Appellant,

v.

Mrs. Homer POOL, Appellee.

No. 313.

Court of Civil Appeals of Texas.

Tyler.

Nov. 16, 1967.

Ramey, Brelsford, Flock & Devereux, Richard Grainger, Michael A. Hatchell, Tyler, for appellant.

Gordon Wellborn & Rex Houston, Henderson, for appellee.

SELLERS, Justice.

Mrs. Homer Pool brought this suit against Arthur Lewis Green to recover damages for the death of her daughter, Linda Pool, who was killed when a pony which Linda was riding collided with a station wagon owned and driven by the defendant Green.

The defendant Green who lives in Jefferson County filed a plea of privilege to be sued in the County of his residence. This plea was controverted by the plaintiff, claiming venue in Rusk County under Section 9a of the Venue Statutes, Vernon's Ann.Civ.St. art. 1995, subd. 9a. After a full hearing by the trial court, the defendant's plea was overruled, from which ruling the defendant has duly prosecuted this appeal. The accident from which this suit arises occurred in Rusk County about 2½ miles South of Henderson, Texas, on Highway No. 259. Highway No. 259 is a main and well-traveled highway which is approximately 35 to 40 feet wide.

At the time of the accident, the defendant, Arthur Lewis Green, was traveling South on Highway No. 259 toward Nacogdoches. Mr. Green testified that he usually drove between 50 and 55 miles per hour but he thought he was probably traveling between 40 and 50 miles per hour at the time in question.

As the defendant was proceeding down Highway No. 259, Linda Pool was approaching the highway on horseback from the East on a narrow oil-topped road. Linda and about a dozen others were participating in a trail ride with various members of a riding group to which she belonged. The oil-topped road on which Linda was riding crosses Highway No. 259 at right angles and there is a stop sign governing traffic on this road as it reaches Highway No. 259. The oil-topped road is substantially lower than the main highway, and one approaching Highway No. 259 on the oil road must proceed from a low spot in the road and up an incline before reaching Highway No. 259.

A Mrs. Watson, the only eye witness of the trail riders to testify at this hearing stated that she and two gentlemen were riding in the lead of about a dozen trail riders that were present at that time. She stated that she and the two gentlemen had reached the right-of-way of Highway No. 259 and had turned to the left near the fence row of the highway. She testified that about the time she turned left at the highway, she heard horses hooves pounding against the oil-topped road; that she looked back and observed Linda's horse coming at full speed toward the highway; that when she first observed the horse running, it was about 150 feet back down the oil-topped road; that she knew Linda's horse to be a gentle horse for her children had ridden the same, and that Linda was a good rider; that when she noticed the horse as it came up the incline and across the highway, the horse was running for all it was worth, and in her opinion, was making between 15 and 20 miles per hour. She further testified that she knew the horse was running away

and she heard one of the trail riders scream just as the horse was within two or three feet of the traveled portion of Highway No. 259; that she then looked and could see both the car and the horse at the time it entered the highway and in her opinion, the car was 100 or 150 feet back toward Henderson from the intersection and traveling at 70 miles per hour or better; that as the horse approached the highway some two or three feet from the main traveled part, going at full speed, it only took seconds after that for the collision to occur. It is without dispute from her evidence as well as that of the defendant that he took no precautionary measures whatsoever as far as slowing his speed or turning right or left. There is no evidence in the record as to what caused Linda's horse to "scare" and "bolt" into a runaway; and there is no contention made that the automobile was responsible for the horse becoming scared.

Mrs. Watson testified that she believed Linda could have brought the horse under control if she had had a little more distance to go.

The defendant stated that he never saw the horse and rider until they hit him although he said he saw a "brown blur" a few feet to the left just before the collision.

It is without dispute that the collision occurred completely within the defendant's lane of travel. When the station wagon and the horse came together, over half of the horse was in front of the station wagon at the time the car struck it, and Linda was still on the horse and the horse was still making 15 to 20 miles per hour. Linda was thrown over the car and into the ditch on the West side of the highway and the horse was hanging onto the station wagon with his entrails scattered all over the station wagon and the ground. The car went some 200 to 300 feet before it stopped after the collision.

■■ To sustain venue in Rusk County, the burden was on the plaintiff to prove negligence on the part of the defendant which was the proximate cause of the acci-

dent. The judgment of the trial court must be sustained unless the undisputed facts relieve the defendant of negligence, or such negligence as was the proximate cause of the accident.

Appellee takes the position that appellant was negligent in failing to observe the horseback riders as he approached the intersection, none of whom were on the paved part of the highway, and failed to observe Linda as she crossed one lane of travel and into defendant's lane of travel and collided with defendant's car, which, according to the evidence would not take her but one or two seconds to reach the point of impact with defendant's car, and that defendant did not slow his speed or turn his car one way or the other in an effort to avoid the collision and for this reason the plaintiff proved its case for venue in Rusk County.

The eye witness testified that when Linda entered the highway, her horse was going 15 to 20 miles per hour; that at that time the car was some 100 to 150 feet back up the highway toward Henderson; and that it only took seconds after that for the collision to occur.

The legal question then for this Court to decide is when did the defendant have to take precautionary action to avoid the collision with Linda on her horse. To determine this question, we will apply the rule laid down in Mortenson v. Hindahl, 247 Minn. 356, 77 N.W.2d 185, as follows:

"Ordinarily a motorist is under duty to exercise reasonable care to avoid injuring animals on the highway, Tyler v. Hoover, 92 Neb. 221, 138 N.W. 128; 60 C.J.S. Motor Vehicles, § 411, but in meeting and passing a horseback rider, he is under no special duty to take steps to avoid a collision therewith unless the horse shows signs of fright or that its rider has lost control of it. Harris v. Hicks, 143 Ark. 613, 221 S.W. 472; Pease v. Cochran, 42 S.D. 130, 173 N.W. 158, 5 A.L.R. 936; Tudor v. Bowen, 152 N.C. 441, 67 S.E. 1015, 30 L.R.A.,N.S., 804. If the horse turns suddenly into the path of the motorist so quickly that the latter cannot avoid striking it, he is absolved from negligence as a matter of law. Pease v. Cochran, supra; 5 Am.Jur., Automobiles, § 266.

"Whether there was negligence on the part of Mrs. Hindahl proximately causing the accident here accordingly would depend upon whether the evidence would support a finding that she had observed that the pony was out of control in sufficient time to take some precautionary measure such as decreasing her speed or turning or stopping so as to avoid coming in contact with it. * * *"

■ Applying this rule to the facts of this case, it would seem that the defendant was under no duty to take precautionary action with reference to these horseback riders on the approaching road. This leaves only his duty to Linda and her horse as she entered the highway and across into the path of defendant's car, just one or two seconds. During this time, under the above authority, the defendant did not have to take precautionary action until he discovered that the horse was out of control. Surely, the defendant had some time to observe that a horse running with a person on the highway, as was Linda's, to determine the horse was out of control, and having discovered it, he must still have time to take precautionary action, and in the absence of such time, the defendant was not guilty of negligence as a matter of law.

■ It is this Court's candid opinion from the record as a whole that the defendant did not see Linda's horse on the highway, but if he had seen it, he would not have had time to take precautionary action to prevent the collision after he discovered the horse was out of control and therefore he was not guilty of negligence in failing to avoid the collision.

We feel that the case of San Antonio Machine & Supply Co. v. McKinley, Tex. Civ.App., 239 S.W. 340, is authority in this State for the holding that a scared horse,

frightened by a train, which shies and collides with an automobile in its lane of travel, such as we have in this case, is the proximate cause of the collision.

The judgment of the trial court is reversed and the cause is ordered transferred to a District Court in Jefferson County, Texas.