JOE HUDSON, ADMINISTRATOR OF JAMES HUDSON, DECEASED, v.
SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 20 November, 1918.)

1. **Negligence—Proximate Cause—Rule.**

The rule that an injury must be the proximate cause of a negligent act of another to be actionable, or a cause that produces the result in continuance sequence, without which it would not have occurred, or which a man of ordinary prudence could have foreseen as probable under existing conditions, does not require that the particular injury complained of in the action should be foreseen, and it is sufficient if it could be reasonably anticipated that injury or harm might follow the wrongful act.

2. **Railroads—Negligence—Evidence—Proximate Cause—Questions for Jury —Master and Servant—Employer and Employee.**

In an action brought to recover damages of a railroad company for negligently causing the death of plaintiff's intestate there was evidence tending to show that in the course of his ·employment the intestate was carrying mail from one of defendant's trains to another, on parallel tracks, across an intervening track, as he was accustomed to do, at the time one of the trains was changing locomotives, and that the old engine, or the one to be left, was enveloped from the intestate's sight by steam from its cylinders, and that this engine, so obscured, backed upon the intestate, contrary to defendant's general order, without signal or warning, or lookout upon the rear of the engine, to warn pedestrians accustomed to pass there of its approach, which would have avoided the injury: *Held,* sufficient for the determination of the jury as to the defendant's negligence, including the question of proximate cause.

3. **Negligence— Federal Employers' Liability Act— Assumption of Risks— Last Clear Chance.**

An employee, under the Federal Employers' Liability Act, only assumes the risks of those defects or dangers that are so obvious that a person of ordinary prudence would have observed and appreciated them, and in applying the doctrine of the last clear chance, under both the State and Federal statutes, the negligence of the plaintiff must be presupposed; hence where the dangers are of such character as to be known only to the defendant, and the negligence producing the injury is that of the defendant, of which the intestate could not have reasonably been aware or have anticipated, the doctrine of the last clear chance is not involved.

4. **Evidence—Negligence—Concurring Negligence— Nonsuit— Questions for Jury—Trials.**

A motion of nonsuit should not be granted, especially where, as under the facts of this case, the contributory negligence of the plaintiff, if any, and that of the defendant concurred in producing the injury complained of in the action.

5. **Appeal and Error—Evidence—Admissions—Trials.**

The party introducing evidence cannot complain thereof because it was not what he expected, or was unfavorable to him.

HUDSON v. R. R.

**6. Appeal and Error—Evidence—Admissions—Harmless Error.**

Exceptions to evidence admitted on the trial which could not have appreciably affected the result of the verdict will not be held for reversible error on appeal.

**7. Evidence—Motions to Strike Out—Depositions—Agreements—Trials.**

Where the parties have agreed that depositions taken in the action should be opened and passed upon by the trial judge, a motion to strike out evidence as incompetent comes too late upon the trial, and not within the agreement made.

**8. Railroads— Negligence— Contributory Negligence— Rules—Abrogation— Evidence.**

Where there is evidence tending to show that plaintiff's intestate, an employee of defendant railroad company, was negligently killed in the course of his employment, as he was carrying mail from one train to another, by defendant's locomotive passing on an intervening parallel track, and a violation of the rules of the company prohibiting employees from so using this track is relied upon, to show contributory negligence, testimony that the agents of defendant knew of the continued violation of this rule is competent upon the question of whether the rule had been abrogated.

**9. Evidence—Collective Facts—Opinions.**

Where the negligence of defendant railroad relates to its failing to keep a proper lookout on its backing engine enveloped in its own steam, testimony of eye-witnesses as to whether the intestate could have been seen in time to have avoided the injury if the lookout had been properly placed on the engine is competent as an instantaneous conclusion of the mind derived from observation of a variety of facts presented to the senses at the same time.

**10. Evidence—Objections and Exceptions—Motion to Strike Out Evidence— Appeal and Error.**

*Semble*, the trial judge has no power to strike out, on motion, testimony which has previously been given, without objection, the statute requiring that exceptions to evidence must be taken at the time.

BROWN, J., dissenting.

APPEAL by defendant from *Harding, J.,* at the May Term, 1918, of UNION.

This is an action by Joe Hudson, administrator of James Hudson, deceased, to recover damages for the benefit of the minor children of his intestate, under the Federal Employers' Liability Act, on account of the negligent killing of said intestate by the defendant railway company.

Plaintiff's intestate, James Hudson, was a station porter of defendant at Monroe, and as such it was his duty to handle the mails and to transfer same, when necessary, from one train to another standing within the yard. He was engaged in this duty when he was struck and killed by an engine of defendant, which was backing in a crowded yard be-

HUDSON *v.* R. R.

tween two passenger trains and through a dense cloud of steam, without giving proper signals and without having a trainman on the rear to keep a lookout, as required by the rules of the company.

The tracks of defendant in the Monroe yard lie east and west, and all are north of the station. On the morning in question train No. 5 came in on track No. 1, or the track nearest the station. Train No. 29 was standing on track No. 3, the mail car of No. 29 being just a little to the west of the mail car of No. 5. The "fresh" engine to carry No. 5 out was standing on track No. 2, just "in the clear." When No. 5 came in the "old" engine was uncoupled and run down the main line—that is, west of where tracks Nos. 1 and 2 join. Then the "fresh" engine also ran down to a point west of the junction of tracks 1 and 2. Then both engines began backing towards the east, the "fresh" engine on track No. 1 to couple up with train No. 5, the "old" engine on track No. 2. As the engines came back the "fresh" engine was blowing clouds of steam out of its cylinder cocks. The "old" engine was a little to the west of the "fresh" engine, the rear end of the tender of the "old" engine being about midway of the "fresh" engine, and as a result of the escaping steam the "old" engine was obscured, and defendant admits in its answer that plaintiff's intestate could not have seen said engine.

After the "old" engine had been uncoupled from train No. 5 plaintiff's intestate was given a sack of mail at the south door of the mail car of No. 5, and was told to put same on No. 29. He went around the west end of the cars of train No. 5, and was going towards the mail car of train No. 29, crossing track No. 2 in a northwesterly direction, and had reached the north rail of track No. 2 when he was knocked down and killed by the "old" engine, which was backing on track No. 2 in the steam.

Plaintiff alleged that the defendant was guilty of negligence in backing the engine in a dense cloud of steam between two passenger trains in a crowded yard, when passengers and employees were likely to be crossing the tracks, and when intestate was accustomed to transfer the mail, also in failing to blow the whistle or ring the bell, or give other signal, and in failing to station a trainman on the rear of the tender, as required by the rules. Defendant admitted that the engine was backing between the two passenger trains. There was evidence that it was customary to transfer the mail from trains on track 3 before the trains on track 1 had pulled out, and that defendant had notice that not only was plaintiff's intestate likely to be transferring the mails, but that other employees and passengers were also likely to be passing between the trains. Defendant admitted that in this yard and between these trains the engine was backing in a cloud of steam, and that the engine backed through this steam without giving any signal with its whistle.

The fireman testified that he was ringing the bell with the cord, but a number of witnesses who were very near testified that they did not hear the bell ringing, and the engineer admitted that he was not using the automatic devise for ringing the bell with which the engine was provided. The defendant admitted that no trainman was stationed on the rear of the backing engine. Defendant's Rule U provides: "Cars will not be moved in front of engine, or engine moved backward, unless there is an employee on the front of the moving car or on the rear of the engine to keep a lookout in the direction the movement is being made, to avoid striking persons or obstruction on the track. Enginemen, as well as conductors, will be held responsible for violation of this rule."

At the conclusion of the evidence the defendant moved for judgment of nonsuit, which was overruled, and defendant excepted. The defendant also excepted to dividing the issue of damages. There are also other exceptions, which will be referred to in the opinion.

The jury returned the following verdict:

1. Was the plaintiff's intestate killed by the negligence of the defendant, as alleged in the complaint? Answer: "Yes."

2. Did the plaintiff's intestate by his own negligence contribute to his death, as alleged in the answer? Answer: "Yes."

3. Did the plaintiff's intestate by his own conduct assume the risk of being run over by defendant's engine and tender, as alleged in the answer? Answer: "No."

4. What damages, if any, is plaintiff entitled to recover for the infant Clarence Hudson, as alleged in the complaint? Answer: "$600."

5. What damages, if any, is the plaintiff entitled to recover for the infant Cora Hudson, as alleged in the complaint? Answer: "$800."

6. What damages, if any, is plaintiff entitled to recover for the infant Ruth Hudson, as alleged in the complaint? Answer: "$1,200."

Judgment was entered on the verdict in favor of the plaintiff, and defendant appealed.

*T. F. Limerick, W. B. Love, and Stack & Parker for plaintiff.*
*Cansler & Cansler and Armfield & Vann for defendant.*

ALLEN, J. The principal exception relied on, and one earnestly urged by the learned counsel for the defendant, is to the refusal to enter judgment of nonsuit, which rests upon the following grounds:

(1) That there is no evidence that the failure to ring the bell or blow the whistle, or to have a man on the tender of the backing train, was the proximate cause of the death of the intestate of the plaintiff.

(2) That there is no evidence that injury to the intestate could be reasonably foreseen or anticipated.

(3) That upon the uncontradicted evidence the intestate assumed the risk of his injury and death.

(4) That if there is any liability of the defendant, it is upon the doctrine of the "last clear chance," which is not applied in the Federal courts, and as this action has been tried under the Federal Employers' Liability Act the rule of the Federal courts must be applied.

In support of the first two positions, the defendant relies on the definition of proximate cause, in *Ramsbottom v. R. R.,* 138 N. C., 41, approved in *Bowers v. R. R.,* 144 N. C., 686, and in *Chancey v. R. R.,* 174 N. C., 333, as "A cause that produces the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed," to which we adhere, with the modification contained in *Drum v. Miller,* 135 N. C., 204, and many other cases, that it is not required that the particular injury should be foreseen, and is sufficient if it could be reasonably anticipated that injury or harm might follow the wrongful act.

The language used is (135 N. C., 214): "When, therefore, a willful wrong is committed or a negligent act which produces injury, the wrongdoer is liable, provided, in the latter case, he could have foreseen that harm might follow as a natural and probable result of his act, for if he can presume that harm might naturally and probably follow he must necessarily intend that it should follow or he must have acted without caring whether it would or not, which, in effect, is the same thing. It may be stated as a general rule that when one does an illegal or mischievous act which is likely to prove injurious to another, or when he does a legal act in such a careless or improper manner that he should foresee, in the light of attending circumstances, that injury to a third person may naturally and probably ensue, he is answerable in some form of action for all of the consequences which may directly and naturally result from his conduct. . . . In the case of conduct merely negligent, the question of negligence itself will depend upon the further question whether injurious results should be expected to flow from the particular act. The act, in other words, becomes negligent, in a legal sense, by reason of the ability of a prudent man, in the exercise of ordinary care, to foresee that harmful results will follow its commission. The doctrine is thus expressed, and many authorities cited to support it, in 21 A. and E. Ency. Law (2d Ed.), p. 487: 'In order, however, that a party may be liable for negligence, it is not necessary that he should have contemplated, or even been able to anticipate, the particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient if, by the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or

omission, or that consequences of a generally injurious nature might have been expected.' "

Backing a train without a lookout on the rear and without notice of its approach along a track which employees and others are accustomed to pass over is negligence (*Lassiter v. R. R.,* 133 N. C., 244; *Hammatt v. R. R.,* 157 N. C., 322; *Ray v. R. R.,* 141 N. C., 84; *Shepherd v. R. R.,* 163 N. C., 518); and under the evidence in this case it was for the jury to say whether this negligence was the real cause of the death of the intestate, and whether harm or injury to some one might be anticipated as the result of the wrongful and negligent act.

The jury were fully justified in finding that a lookout in an elevated position on the tender could have seen the intestate in time to warn him and prevent his stepping on the track, or that the ringing of the bell or sounding the whistle would have given notice of the approach of the train in time to avoid the injury, and that some injury might have been anticipated from backing a train, without protection, along a track much used, between two passenger trains on parallel tracks, through a cloud of steam.

The second and third grounds for the motion for judgment of nonsuit may be dealt with together, for while they rest on different legal principles, in the present case, they are dependent on the same facts and conditions.

The doctrine of the "last clear chance" presupposes the previous negligence of the plaintiff, and liability is imposed upon the idea that, notwithstanding this negligence, the defendant has the last opportunity of avoiding the injury, and an employee, under the Federal decisions, is held to assume the risk of those defects and dangers so obvious that a person of ordinary prudence would have observed and appreciated them. *Erie R. R. v. Purucker,* 244 U. S., 320.

These principles have no application here, and certainly they cannot be held to be determinative as matter of law, because the evidence and the findings of the jury show the concurrent negligence of the intestate and the defendant, and not the previous negligence of the plaintiff, and the last opportunity with the defendant to avoid injury; and the dangers, instead of being obvious, were unknown to the intestate, and he had no reason to anticipate them, caused, as they were, by the negligence of the defendant.

The case of *R. R. v. Koennecke,* 239 U. S., 252, is very much in point, and it also distinguishes *Aerkfetz v. Humphreys,* 145 U. S., 418, on which the defendant relies. In that case it appeared that plaintiff's intestate, while acting as a switchman in the defendant's yard, was run over and killed by a train which was backing without a trainman on the rear to keep a lookout and without giving signals of its approach, and the Court

said: "We see equally little ground for the contention that there was no evidence of negligence. It at least might have been found that Koennecke was killed by a train that had just come in and was backing into the yard; that the movement was not a yard movement; that it was on the main track, and that there was no lookout on the end of the train and warning of its approach. In short, the jury might have found that the case was not that of an injury done by a switching engine known to be engaged upon its ordinary business in a yard, like *Aerkfetz v. Humphreys,* 145 U. S., 418 (36 L. Ed., 758; 12 Sup. Ct. Rep., 835), but one where the rules of the company and reasonable care required a lookout to be kept. It seems to us that it would have been impossible to take the case from the jury on the ground either that there was no negligence or that the deceased assumed the risk."

In *Erie R. Co. v. Purucker,* 244 U. S., 320, Marietta, the injured person, was a section man in the employ of the defendant company. The manner of his injuries is there described in the language of *Mr. Justice Day:* "Early on the morning of the injury he started from his residence to report to the foreman accordingly. It appears that at and near the place of injury the company had a double track; that the north track is used for trains going west and the south track for trains going east; that the plaintiff, in going to the place designated, went upon the south track, and was walking eastwardly when a passenger train bound east came upon this track, and, to get out of the way of it, he stepped over upon the north or west-bound track; that while walking on that track he was struck and run over by an engine which was running backward and in the opposite direction from that in which the trains ordinarily ran upon the north track. This engine had been detached from a train of cars and, after pushing another train up a grade on the west-bound track, was returning to its own train at the time of the injury. Marietta testified that he had no warning and did not see the approaching engine, owing to steam and smoke from the passenger train, which had just passed upon the other track. The engineer and fireman of the backing engine testified that they did not see Marietta until after he was run over by the engine, and gave no signal or warning of its approach."

The Court sustained a recovery for plaintiff under the Employers' Liability Act, and in holding that there was no error in refusing a prayer on assumption of risk said: "Under such circumstances, the injured man would not assume the risk attributable to the negligent operation of the train, if the jury found it to be such, unless the consequent danger was so obvious that an ordinarily prudent person in his situation would have observed and appreciated it."

We are therefore of opinion the motion for judgment of nonsuit was properly overruled.

The plaintiff took the deposition of one Horton, and on cross-examination, in answer to a question by the defendant, he said it was not necessary for steam to escape from the cylinder cocks. There was no objection to the answer and no motion to strike it out. The deposition was returned, and it was agreed that it should be opened and passed on by the judge as though written exceptions had been filed before the clerk. At the trial, the defendant moved to strike out the answers of the witness, which was refused, and the defendant excepted.

The motion came too late after the trial commenced and was not properly within the agreement of the parties that the judge should pass upon the deposition as upon exceptions filed before the clerk. A party cannot except to evidence brought out by himself, nor can he, as of right, suppress an unfavorable answer when he expected a favorable one. Again, the answer could have no appreciable effect on the trial, as the escape of the steam was admitted by both parties, and it was relied on to show that the intestate could not see the approaching train, and not as an act of negligence.

There are certain exceptions based on the admission of testimony to the effect that it was customary for deceased to transfer mail from trains on track No. 1 to trains on track No. 3 before the trains on track No. 1 had pulled out, and that the agents of defendant knew of this custom and did not object to it. This evidence was offered in answer to the contention of defendant that plaintiff was guilty of contributory negligence in so transferring mail contrary to orders. This evidence was competent as tending to prove an abrogation of the rule which the defendant claimed the plaintiff had violated, and also for the purpose of showing that the defendant might reasonably expect employees to be on the track on which it was backing its train.

The defendant introduced the engineer, Shiver, in charge of the train on the parallel track, who testified, on cross-examination, as follows:

"Q. There was no reason why the man in charge of the other engine could not have seen Jim, was there? He could not have seen him because Jim was at the rear.

"Q. But if they had a man at the rear he could have seen him? Certainly."

No objection was made at the time question was asked and answered. Some time later in the trial defendant asked that his objection and exception to this question and answer be entered. The plaintiff objected, but the court overruled the objection of plaintiff and allowed the defendant's objection and exception to be entered.

Also the engineer, Garnett, in charge of the train which killed the deceased, who testified on cross-examination:

"If there had been a man on the rear of the tender I don't know whether he could have seen him or not.

"Q. You could see beyond the rear of the tender yourself, but you could not see Jim because the tender was in the way? A. Yes, sir. I couldn't see through the tender, and there was the steam too.

"Q. If there had been a man on the rear of the tender he could have seen Jim then?"

Objection by defendant; overruled; exception. .

"Possibly he could; yes, sir." ·

The objection to the evidence of the witness Shiver might be disposed of upon the ground that exceptions to evidence must be taken *at the time,* and unless so taken, the objection is waived (*Taylor v. Plummer,* 105 N. C., 56; *Lowe v. Elliott,* 107 N. C., 718; *Alley v. Howell,* 141 N. C., 116); and as this is a requirement of the statute, his Honor had no right to suspend its operation; and to the evidence of Garnett, that it was too indefinite to affect the result, he having first said he did not ·know whether a man on the tender could have seen the intestate, and then possibly he could, and finally yes, but giving the objection full effect, the evidence is admissible as a short-hand statement of the fact— "the instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time." McKelvey Ev., 174.

The defendant also objected to dividing the issue of damages, but his Honor followed the course approved in *Horton v. R. R.,* 175 N. C., 474.

A discussion of the exceptions to the charge and to refusal to give certain special instructions would be .of no practical benefit. We have examined them carefully and have compared the prayers with the charge given, and find no reversible error.

No error.


BROWN, J., dissenting: I concur in the opinion of the Court upon the first, second, and third issues. I dissent from the judgment of the Court upon the fourth, fifth, and sixth issues as to damage.

. Three separate issues as to damage were submitted—one for each child of the deceased. If he had left a dozen children, then, under the ruling of the Court, a dozen issues as to damage would have been submitted, so the more children the deceased left the larger the recovery. I do not think.this method of assessing damage is contemplated by the Act of Congress. The assessment should be in solid, based upon the earning power of the deceased, and one recovery allowed for all beneficiaries. The dissenting opinion of *Justice Walker* in *Horton v. R. R.,* 175 N. C., 488, leaves nothing to be said on the subject.