D. L. GORE v. CITY OF WILMINGTON.

(Filed 2 November, 1927.)

1. **Evidence—Nonsuit.**

On the defendant's motion as of nonsuit the evidence, and every reasonable inference therefrom, is to be accepted as true and construed in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable intendment to be drawn therefrom.

2. **Water and Water Courses — Cities and Towns — Streets — Surface Waters—Negligence—Damages.**

Where there is evidence tending to show that a city has formerly constructed and maintained a proper drainage for its streets then sufficient to carry off the surface water, and prevent its accumulation to the damage to property situate upon the same, and by a change to hardsurfacing its streets the flow of the water has been so largely increased as admittedly to render its drainage system grossly inadequate: *Held,* it is sufficient to make out a case of actionable negligence against the city for damages caused to an owner of lands by reason of an overflow of water destroying a garage he had erected.

3. **Same—Drainage.**

In hardsurfacing its streets and largely increasing the flow of surface water thereon, a city is required in the exercise of due care, to provide drainage reasonably sufficient to carry off the increase of the flow of water so as not to cause damages to the landowners.

**4. Instructions—Requests for Instructions—Statutes.**

Where the judge has sufficiently charged the jury as to the law aris-
ing under the evidence in the case in compliance with C. S., 564, such
further matters of instruction as the appellant may desire should be
offered by special request for instruction.

**5. Pleadings—Bill of Particulars—Motions.**

Where the pleading objected to is sufficient in law, the party should
aptly move for a bill of particulars to obtain more detailed information
as to the matters alleged.

APPEAL by defendant from *Bond, J.,* and a jury at May Term, 1927,
of NEW HANOVER. No error.

This is an action for actionable negligence brought by plaintiff
against defendant for damages. Plaintiff is the owner of a certain
piece of land in the city of Wilmington on the west side of Third
Street, between Princess and Market streets, on which is located a
garage known as Johnson Motor Company Garage. Formerly an open
branch, or natural water course, known as Jacobs Run, which empties
into the Cape Fear River, flowed under said garage.

The plaintiff alleges: "That the city of Wilmington in constructing,
maintaining and operating the said Jacobs Run and the surface drains
along the streets of the city of Wilmington on Third Street and else-
where in the neighborhood of the property of this plaintiff, has negli-
gently constructed, maintained and operated said drains in that it has
turned into Jacobs Run and into surface drains adjacent to the prop-
erty owned by the plaintiff great amounts of water in excess of the
amounts which can be accommodated by said drains, thereby causing
the water to overflow the said drains and streets frequently and re-
peatedly in case of large rains, though not unusual rains, thereby dam-
aging the property of the plaintiff and others.

"That on account of the said negligent construction, maintenance and
operation of the said drains, as above alleged, the said city of Wilming-
ton negligently and carelessly caused to be turned into Jacobs Run on
or about 25 July, 1922, large quantities of water, causing great pressure
against the underpining and walls of the property of the plaintiff, un-
dermining same and causing the said walls to tumble and fall down, to
the great damage of the plaintiff in the amount of about $3,500.

"That the plaintiff promptly served notice on the city of Wilmington
of the said claim and damage and demanded payment thereof by the
defendant and the defendant has refused to pay same."

The defendant denied the material allegations of the complaint, and
in further answer says: "That it has and exercises such control within
its boundaries, of the construction, maintenance and supervision of the

streets and sidewalks of said city and of the grades thereof and of the drains and watercourses within the city limits, as are conferred upon it by law, and as are particularly conferred upon it by chapter 244 of the Private Laws of 1907, and the acts amendatory thereof, together with such powers as are conferred upon it by the present city charter."

The issues submitted to the jury and their answers thereto were as follows:

"1. Was the injury and damage to plaintiff's property caused by the unlawful acts, or omissions of the defendant, as alleged in the complaint? Answer: Yes.

"2. What damage, if any, has the plaintiff sustained by reason of such unlawful acts, or omissions? Answer: $2,000, with interest from 1 October, 1922."

Numerous exceptions and assignments of error were made by defendant. The material ones and necessary facts will be considered in the opinion.

*Rountree & Carr* for plaintiff.
*K. O. Burgwin* for defendant.

CLARKSON, J. The main assignment of error made by defendant was that the court below overruled defendant's motion for judgment as in case of nonsuit at the close of plaintiff's evidence and at the close of all the evidence. C. S., 567. In this we think there was no error.

"It is the settled rule of practice and the accepted position in this jurisdiction that, on a motion to nonsuit, the evidence which makes for the plaintiff's claim and which tends to support her cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and she is 'entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.' *Christman v. Hilliard,* 167 N. C., p. 6; *Oil Co. v. Hunt,* 187 N. C., p. 159; *Davis v. Long,* 189 N. C., p. 131." *Nash v. Royster,* 189 N. C., at p. 410.

The action was one for actionable negligence. The evidence of plaintiff was to the effect, shown by direct and circumstantial evidence, that Jacobs Run was a natural watercourse, Jacobs Run watershed draining an area of about thirty-five acres. In comparatively recent years the streets affected by this drainage territory or watershed have been graded and hardsurfaced; that prior to the building of the hardsurfaced streets in the drainage area, the streets were sand and porous and absorbed the rainfall, 44% of the drainage is street area. If the streets

were all sand, like they once were, 80% would be absorbed and 40% run off, but now 90% of the water flows over the hardsurface.

The defendant had changed the streets from sandy, porous soil to hardsurface, creating an artificial flow of water of much greater volume into Jacobs Run.

The garage was built over Jacobs Run. The natural flow on the streets was down to the garage, which was lower. To drain the run through courthouse yard, above the garage, an 18-inch terra cotta pipe underground was installed, which drained into a manhole or catch-basin on the east side of Third Street. Then there is a 36-inch masonry culvert under Third Street. Then in front of the garage on the west side of Third Street is a manhole or catch-basin, connected to two 24-inch terra cotta pipes underground leading under the garage, extending on towards Second Street and emptied into the Cape Fear River. The old culvert and terra cotta piping was put in Jacobs Run when the streets in the drainage territory or area were sand, prior to the hardsurfacing of said streets—Market, Third and Princess.

The water coming down the streets, since the hardsurfacing, during heavy but not unusual rains, would be of such volume and traveling at such speed that large and excessive quantities would not go into the manholes or catch-basins, but would flow down the hardsurfaced streets into the garage of plaintiff's lessee.

The gutter on the west side of Third Street, in front of the garage, was about 20 inches below the level of the entrance of the garage. From the accumulation and velocity of the water in the streets, the water would flow down Third Street to the lowest level in ordinary, but not unusual, rains into and flood the garage. The Johnson Motor Company provided a special cut board of pine 1 x 12 inches to fit the door of the garage to hold the water back, and the water even then came over the 12-inch board. This condition could be seen from the City Hall and continued for years. The water would accumulate a foot deep over the manhole or drain in front of the garage, and it would not carry the water off. On 25 July, 1922, at the time the wall collapsed, the water burst through the big swinging front doors of the garage and washed right through like a river. It banked up on the back of the building. The weight of the water shoved the building out. The wall fell completely from top to the bottom. It didn't drop down, but turned out both ways, west and south.

Defendant showed that in the last ten years there had been in that section an increase in rainfall; that the manholes or catch-basins, including those in front of Johnson Motor Company Garage, are of the ordinary, usual and customary design. Princess Street was paved before

1908. Third Street was paved about 1912. The manholes or catch-basins were constructed when the streets were paved. It was usual and customary for engineers to provide for a rainfall not to exceed two inches per hour; that is the basis in Eastern North Carolina, so that in designing the catch-basins, manholes or storm sewers, the city provided drainage based on a certain rainfall of not exceeding two inches per hour. This was reasonably adequate prior to the last four or five years, for that purpose; that the injury to plaintiff's building was caused by obstructions to the manholes or drains by plaintiff's lessee.

The defendant also offered evidence tending to show that the foundation of plaintiff's building was not properly constructed for the wall of the kind, under the conditions. On cross-examination J. L. Becton, a witness for defendant and civil engineer representing defendant in street construction work, testified, without objection, in part: "I have recently made complete survey of the area of Jacobs Run and designed a sewer for the city and installed it to take care of three inches per hour. After making that investigation of Jacobs Run it is a fact that I decided, as an engineer, that it was necessary for the city to provide other means of drainage, and as a result of that I began at the river at the Market Street dock and installed a culvert, constructed of cement from that point up to the courthouse, for the purpose of relieving the water in this drainage area. This culvert is 54 inches at the river and 48 inches from Second to Third Street, and 42 inches from there to near Fourth and Princess. Old Jacobs Run was 36 inches, and my pipe is 48 inches where I come into it. The Jacobs Run pipe was 36 inches. That 36-inch pipe extended just across Third Street to the manhole in front of the Johnson Garage. From the manhole in front of Johnson's Garage, Jacobs Run consisted of a couple of 24-inch pipes approximately the same carrying capacity as the 26-inch. The area of the cross-section of a 48-inch pipe is twice as large as the area of the two 24-inch pipes. The comparison between the 36-inch pipe as compared to the 48-inch pipe is about seven to twelve. In other words, the 48-inch pipe would carry in the proportion of seven to twelve. The new system recently installed has been substituted for Jacobs Run. It has about twice the carrying capacity of Jacobs Run. Jacobs Run, where we tore it up at Second Street, was in good condition. As far as we could observe to Johnson's Garage it was in reasonably good condition. One of the pipes was cracked, but didn't look to be in serious condition. The new drain only takes care of three inches of rainfall per hour. At present the capacity of the new drain is twice as much as the old one. Jacobs Run, ten or fifteen years ago would, I would say, have been adequate with the experience and practice at the time, for a two-inch

run-off on an area like this. The fellows who put in that system considered its capacity in excess of requirements. There is very little difference in the area of paved streets in this drainage area now as compared to July, 1922. It is practically the same now as it was then, in designing the new drainage system. The fact of the increased rainfall in the last few years caused me to change the basis of my calculation. I have increased the capacity about double. I do not say that the rainfall has increased that much, but I am designing for the future and not for today. I don't know what the condition of Jacobs Run was in 1922, and I am unable to say whether at the time it was adequate to take care of the water."

The court below correctly charged the law of negligence and proximate cause.

An assignment of error to the following excerpt from the charge cannot be sustained: "The court charges you that where a municipal corporation constructs and controls the sewers or drains solely, and they, by reason of their insufficient size or condition of use, clearly demonstrated by experience, result under ordinary conditions, in overflowing the private property of an adjoining or connecting owner, that the principle of exemption from liability for defect or want of efficiency of plan does not extend to such a case, and if you should find from the evidence and by its greater weight that experience had demonstrated that these sewers or drains were insufficient to carry off the water, and by reason of such insufficiency water was backed or thrown onto the premises of the plaintiff and resulted in injury, you will answer the first issue, Yes."

In Dillon on Municipal Corporations, 5th ed., Vol. 4, sec. 1739, the principle is laid down as follows: "We now add that the later cases tend strongly to establish, and may, we think, be said to establish, and in our judgment rightly to establish, that a city may be liable on the ground of negligence in respect of public sewers, solely constructed and controlled by it, where by reason of their insufficient size, clearly demonstrated by experience, they result under ordinary conditions in overflowing the private property of adjoining or connecting owners with sewage, and that the principle of exemption from liability for defect or want of efficiency of plan does not, as more fully stated below (secs. 1745, 1746), extend to such a case." See Dillon, *supra,* sec. 1731 to 1746, inclusive; *Chalkley v. City of Richmond,* 88 Va., 402, 29 Am. State Reports, p. 730, and notes.

An assignment of error to the following excerpt from the charge cannot be sustained: "The court further charges you that while municipal authorities may pave and grade their streets and are not ordinarily liable for an increase of surface water naturally falling on the lands

of a private owner, where the work is properly done, they are not allowed, from this or other cause, to concentrate and gather such waters into artificial drains and throw them on the lands of an individual owner in such manner and volume as to cause substantial injury to the same and without making adequate provision for its proper outflow, unless compensation is made, and for breach of duty in this respect an action will lie, and if you find from the evidence, and by its greater weight, that, in the construction of the drain and the paving of the city's streets, it did not provide an adequate system of drainage for the proper outflow of such water as may have been collected and directed through plaintiff's property, or if you find that, even though the system was properly constructed, it was not properly maintained; or the city negligently permitted trash and other things to obstruct the flow of water into the manhole, and that forced a large quantity of water upon the property of the plaintiff, causing his damages, you will answer the first issue, Yes."

The first part of this instruction is taken *verbatim* from *Yowmans v. Hendersonville,* 175 N. C., p. 574, at p. 578; *Eller v. City of Greensboro,* 190 N. C., 715. We think both of the above cases sustain the charge, and in both cases text-books and numerous authorities are cited that sustain the charge.

The defendant requested the court to give the following instructions, which was done: "It is not sufficient to show that in grading and paving its streets, the city diverted upon the plaintiff's property more water than would naturally flow there; because in regard to the flow and disposal of surface water incident to the grading and paving of streets, a city acting under legislative authority is not ordinarily responsible for the increase in the flow of water upon abutting owners, unless there has been negligence on their part, and such negligence is the proximate cause of the damage complained of. So, that in this case, the burden is upon the plaintiff to establish by the greater weight of the evidence, (a) that his property has been damaged in the manner alleged in the complaint; (b) that the city was careless and negligent in the manner in which it paved the streets, or in which is constructed and maintained the traps and drains, or in some other particular; (c) that such negligence on the part of the city was the proximate cause of the plaintiff's damage. If the plaintiff has so satisfied you by the greater weight of the evidence, you would answer the first issue, Yes; otherwise you would answer it No.

If at the time these streets were graded and paved and drains constructed the city, in the exercise of due and reasonable care under the conditions then existing, made adequate provisions for the flow and dis-

posal of surface water under all ordinary rains and storms likely to occur, and the damage to the plaintiff's property was caused by unusual or excessive rain or rains, which in the exercise of due care and caution, the city could not have foreseen or provided for, then the plaintiff would not be entitled to recover, and you should answer the first issue No. If, at the time these streets were graded and paved and drains constructed, the city, in the exercise of due and reasonable care under the conditions then existing, made adequate provision for the flow and disposal of surface water, under all ordinary rains and storms likely to occur, and the damage to the plaintiff's property was caused by the plaintiff's own negligence, in the manner in which the concrete floor of the garage was constructed and maintained, if you should find that the same was negligently constructed and maintained, or, on account of the negligent manner in which the plaintiff constructed the south wall of the building, if you should find that the same was constructed in a negligent manner, or, on account of the negligent manner in which the plaintiff or his lessee permitted the same traps to be obstructed, if you should find the same were so negligently obstructed, the plaintiff in either of those events would not be entitled to recover, and if you so find, you should answer the first issue No."

The charge was more favorable than the defendant was entitled to, as follows: "The city could not have foreseen or provided for." In *Hudson v. R. R.,* 176 N. C., p. 492, "That it is not required that the particular injury should be foreseen and is sufficient if it could be reasonably anticipated that injury or harm might follow the wrongful act." *Ellis v. Power Co.,* 193 N. C., p. 357.

The assignments of error as to the issues submitted and the refusal to give those tendered by defendant, cannot be sustained. The case was tried out on the theory of actionable negligence and the charge on negligence and proximate cause was clearly given. Nor can the assignment of error as to the admission of certain evidence—it put the city, at least, on notice—in any event it was not prejudicial. We see no prejudicial error in the charge and it comes up to the requirements of C. S., 564. The charge must be considered as a whole, and taking the prayers given at the request of defendant, we think the court below, under all the facts set forth the contentions properly and the law applicable to the facts. Although the plaintiff may not in detail have set forth in his complaint how defendant negligently constructed, maintained and operated the drains, etc., no bill of particulars nor motion to' make complaint more definite and certain were requested. *Power Co. v. Elizabeth City,* 188 N. C., p. 279. It was in evidence that for years the place owned by plaintiff had been flooded and many times each year. This

was known to defendant; its courthouse with its officials was in sight. It knew, or in the exercise of due care ought to have known, this fact. Yet it allowed this flooding to go until on 25 July, 1922, the water, in the language of the witness, "Washed right through like a river," the wall collapsed and "fell completely from top to the bottom." The evidence, if not direct, was circumstantial that the drains, catch-basins, etc., were too small or improperly constructed, or not sufficient in number and the drainage system was wholly inadequate.

Without objection, the city engineer testified, on cross-examination, that after making an investigation of Jacobs Run it was necessary for the city to provide other means of drainage. A cement culvert was constructed from the river to relieve the water in this drainage area. This "new storm sewer," as it was called on the map in evidence, is 54 inches at the river and runs up Market Street, cuts across Third Street and makes connection with the Jacobs Run 36-inch pipe. The new pipe at this location is a 48-inch pipe. The new storm sewer has about twice the carrying capacity of Jacobs Run system. The jury were entitled to consider all this evidence in arriving at a verdict.

Speaking to the subject Dillon, supra, p. 3037, says: "Under the general power to grade and improve streets or construct public improvements beneficial to it, cannot deprive others of their legal rights in respect of the watercourse or injure the property of others by badly constructed and insufficient culverts or passageways obstructing the free flow of the water without being liable therefor."

The line of demarcation sometimes is not easily drawn between municipal agencies acting in their governmental, legislative or judicial capacity or otherwise—ministerial or administrative. The direct and circumstantial evidence tended to show that in heavy but not unusual rains, that defendant in the construction of its drainage system in the particular area did so in such a negligent and unlawful manner that water was collected in large and excessive quantities. That the natural flow of the water on account of the lack of sufficient drains, etc., ponded in front of plaintiff's place of business. That when the streets were hardsurfaced by defendant the natural watercourse was substantially affected, the soil absorption eliminated and the flow accelerated over the hardsurfaced streets to artificial drains insufficient and inadequate to carry the water off. The topography of the area of land was such that the system constructed by the defendant was wholly inadequate and insufficient. In consequence, the free flow of water was obstructed and impeded, and large and excessive volume of waters were collected and ponded and thrown on plaintiff's land repeatedly so as to cause a positive and direct invasion of plaintiff's property and causing substantial

injury. Plaintiff had no control over this drainage and was dependent on the defendant to protect his property from negligent construction, maintenance and operation of its drainage system in the area. Plaintiff had no legal right or authority to attempt to or remedy this condition that so interfered with the use of his property, and in consequence it became almost a continuing trespass or nuisance. Plaintiff and his lessee for years had tried to keep the accumulated water out of the place of business, but at last the water from the negligent congestion, impeded by insufficient drains, inadequate construction, etc., emptied on plaintiff's property and ultimately caused a collapse of the building and injury to the personal property therein. Only then did defendant remedy the inadequate and insufficient drainage system by making the capacity double what it was before. The evidence was plenary to be submitted to a jury. We can find in law

No error.