Civil action to recover damages for personal injuries alleged to have been caused by the wrongful act, neglect, or default of the defendants.
The evidence on behalf of the plaintiff tends to show that on the night of 21 September, 1935, the plaintiff, a young woman 22 years of age, and Grady L. Wyrick, came from Kinston to Goldsboro, intending to take the Southern train for Greensboro. They arrived at the Union Station in Goldsboro about 9:45 p.m., purchased their tickets, and waited in the waiting room until the Southern train for Greensboro was called by a station porter. This was about 9:55. The Southern train was due to leave at 10:00 p.m. It was standing on the third track from the waiting room, headed south. On the fourth or farthest track from the waiting room was the northbound Coast Line train, running slightly behind schedule that night, which had been called to leave before plaintiff arrived at the station, and which actually started at 9:57.
As the station porter announced the Southern train at the door of the waiting room, he heard the conductor of the Coast Line train call "board," and the porter himself repeated the call. Neither the plaintiff nor her companion heard the call of the Coast Line conductor; and in response to the announcement that the Southern train was ready to leave, they immediately started for their train. As they approached the Southern train standing on the third track — it not being easy to distinguish between the two trains without some assistance or instruction — Wyrick asked the porter, who had called the trains in the station and who was wearing a red cap, whether the train he was approaching was the train for Greensboro. The porter replied, "No, sir; that is your train over there," pointing to the Coast Line train, which was on the track farthest away. This train was in plain view of the porter, with its door and vestibule open, but he gave no warning to plaintiff, or her companion, that the conductor had already called "board" and that the train was ready to start. There was no Coast Line official or employee outside of the train, nor was there a step to get on the train. The door to the day coach was open, and as the plaintiff "took hold of the handle *Page 594 
and started to place her foot on the step," the train started with a jerk, threw her off and under the train, and cut off her right leg just below the knee.
It is further in evidence that the Union Passenger Station at Goldsboro is owned by the Goldsboro Union Station Company, a corporation, and operated by it for the joint accommodation of the railroads entering said station, to wit, the Southern, the Coast Line, and the Norfolk and Southern. C. S., 1042. By written agreement, it is provided that the use of the station, tracks, and facilities "shall be subject to the jurisdiction of the Station Company, its station master, and employees"; with the proviso that the station master of the Station Company is to be appointed only by unanimous consent of the three railway companies, and his dismissal, as well as that of any subordinate official of the Station Company, is to be insured upon the written request of any one of the said railway companies. In the actual operation of the station, the agents and employees of the Station Company sell tickets for the railway companies, announce the arrival and departure of trains, and assist and direct passengers to and from their trains.
There is also evidence to the effect that it was customary for the "red cap porters" to call trains and to assist passengers in and out of the station, to and from their trains.
Upon demurrer to the evidence, at the close of plaintiff's case, judgment of nonsuit was entered as to the Southern Railway Company. Exception by plaintiff.
The Coast Line and the Station Company each offered evidence in support of its denial of liability.
The evidence of the Coast Line is to the effect that when the conductor and flagman gave the starting signals by calling "all abroad" and waving lantern, neither the plaintiff nor her companion, nor anyone else, was in sight, or preparing to board the train. After giving the usual signals, the attendants all boarded the train; the conductor "pulled the train ahead," and it started. Passengers and others testified that the train was in motion when the plaintiff and her companion came running across the third track and attempted to get on it.
The evidence on behalf of the Station Company tends to show that it did not employ anyone called a "porter," but did employ two "transfer men" to handle mail and baggage, and one of them had the duty of calling trains on the night in question, but he did not wear a red cap. He gave no information or instruction to the plaintiff, or her companion, in respect to their train. It is further in evidence that the Station Company allowed two colored boys, called "red caps," to carry baggage for passengers to and from trains solely for the tips they might receive and without any compensation from the Station Company or the *Page 595 
railroads. These "red caps" did not have any duty "in respect to calling trains," though they might show passengers which trains to take at times, and sometimes they directed passengers to the station. They were given no authority by the Station Company. Both "red caps" were at the station when the plaintiff was hurt. They both denied having given the plaintiff, or her companion, any directions, or that they were asked by either of them for any information as to their train.
The jury answered the issues of negligence against the Goldsboro Union Station Company and the Atlantic Coast Line Railroad Company, exculpated the plaintiff from any contributory negligence, and awarded damages in the sum of $25,000.
The plaintiff appeals from the judgment of nonsuit in favor of the Southern Railway Company.
The Goldsboro Union Station Company and the Atlantic Coast Line Railroad Company appeal from the judgment rendered on the verdict.
It is agreed on all hands that the plaintiff suffered a distressing and unfortunate injury at the Union Station in Goldsboro on the night of 21 September, 1935. The trial resulted in a nonsuit as to the Southern, and verdict and judgment against the other defendants. There are three appeals.
PLAINTIFF'S APPEAL.
It is stated in plaintiff's brief that if the judgment is affirmed as to either of the appealing defendants, "the plaintiff does not desire a new trial against the Southern, and is willing that her appeal be dismissed." In the light of this statement, and the subsequent disposition to be made of defendants' appeals, the plaintiff's appeal will be dismissed without considering the correctness of the judgment of nonsuit in favor of the Southern.
DEFENDANT STATION COMPANY'S APPEAL.
It is earnestly insisted that no liability has been shown against the Station Company, because the misdirection of the "red cap," if indeed he gave any instruction, was unauthorized, and in no event could it have been the proximate cause of plaintiff's injury. *Page 596 
In considering the defendant's demurrer to the evidence, it should be remembered the testimony is in sharp conflict, and the jury has accepted the plaintiff's version of the matter. Assuming that the "red cap" who called the train in the station was the "same man" who misdirected the plaintiff and her companion, as the jury has evidently found, it cannot be said, upon the present record, that his acts were not within the apparent scope of his authority. Lane v. R. R., 192 N.C. 287, 134 S.E. 855;Leggett v. R. R., 168 N.C. 366, 84 S.E. 357; Parrish v. Mfg. Co., ante, 10, and cases there cited. And it can profit the defendant nothing in the present action that the "red cap" was only a volunteer worker and not upon its pay roll. Booker v. Penn. R. Co., 82 Pa. Super., 588. With permission of the defendant, he was allowed to work upon the premises, for what he might receive in tips, it is true, nevertheless his acts were those of the defendant in the discharge of the contractual duties which it owed to the railroads using its station, and to their passengers. Annotations, 59 A.L.R., 126. He was carrying out his customary duties. Leggett v. R.R., supra; Mangum v. R. R., 145 N.C. 152, 58 S.E. 913; Pineus v. R. R.,140 N.C. 450, 53 S.E. 297; Willis v. R. R., 120 N.C. 508,26 S.E. 784. See, also, Cooper v. Ry. Co., 165 N.C. 578, 81 S.E. 761;Sutton v. Lyons, 156 N.C. 3, 72 S.E. 4; and Snipes v. R. R., 144 N.C. 18,56 S.E. 477. At any rate, there is evidence to support this view, which must be taken as true on motion to nonsuit. C. S., 567; Moore v. R. R.,165 N.C. 439, 81 S.E. 603. The plaintiff must be given the benefit of every fact and inference of fact pertaining to the issues involved, which may reasonably be deduced from the evidence. Nash v. Royster,189 N.C. 408, 127 S.E. 356.
"When one who knowingly and without objection receives the benefits of labor, or holds out to the public one as engaged in his service, he is liable as a master for the negligence of such servant when the act or failure constituting the negligence comes within the apparent scope of the employment, even though he has not employed or paid the servant." D. R.G. R. R. Co. v. Gustafson, 21 Colo. 393.
Further, speaking to the subject in Booker v. Penn. R. Co., supra,Keller, J., delivering the opinion of the Court, said: "The fact that a traveler gives a tip to a porter for courteous service in the carriage of his hand luggage does not make the porter his servant for whose negligence he is responsible any more than a tip given to a bell boy in a hotel, to a waiter in a restaurant, or to a hat check employee, changes the status of their respective employment. Nor does the fact — if such is the case — that the railroad company does not pay its employees while they are `portering only,' but that their sole source of revenue in such circumstances is the tips which they receive from passengers, negative the continuance of their employment while acting as porters or relieve *Page 597 
the employer of responsibility for their acts within the scope of their employment."
Moreover, it is well settled, as stated in 39 C. J., 1284, and quoted with approval in Colvin v. Lumber Co., 198 N.C. 776, 153 S.E. 394, that "where it is doubtful whether a servant in injuring a third person was acting within the scope of his authority, it has been said that the doubt will be resolved against the master because he set the servant in motion, at least to the extent of requiring the question to be submitted to the jury for determination." See Gallop v. Clark, 188 N.C. 186,124 S.E. 145.
Again, in Union Depot Co. v. Londoner, 50 Colo. 22, 114 P. 316, it was held: "A corporation organized for the purpose of maintaining a station or depot to be used by railroad companies, owes to the traveling public, as to the conduct of such station or depot, the same duty as is due from the railway company which maintains its own station; and its obligations toward the public are not affected by the agreement between itself and the railway company."
It is also a permissible inference, which the jury obviously drew from the evidence, that the misdirection of the "red cap" was the proximate cause of plaintiff's injury. True, he could not foresee precisely what transpired, nevertheless, with his superior knowledge of the situation, to wit, that the starting signals had been given, that the attendants had all boarded the train, and that it was expected to move momentarily, he should have foreseen that consequences of a serious nature were likely to occur without some warning to plaintiff and her companion. Hinnant v. R. R.,202 N.C. 489, 163 S.E. 555; Hall v. Rinehart, 192 N.C. 706,135 S.E. 790; Hudson v. R. R., 176 N.C. 488, 97 S.E. 388; Drum v. Miller,135 N.C. 204, 47 S.E. 421. This defeats the motion to nonsuit and makes it a case for the jury. Collins v. Lumber Co., 195 N.C. 849,141 S.E. 580.
Negligence is the breach of some duty imposed by law. It is doing other than, or failing to do, what a reasonably prudent man, similarly situated, would have done. The conduct of the reasonably prudent man is the accepted standard. Tudor v. Bowen, 152 N.C. 441, 67 S.E. 1015. "The term `negligence' has been defined by the Federal Supreme Court to be the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person under the existing circumstances would not have done. The essence of the fault may lie in omission or commission. The duty is dictated and measured by the exigencies of the situation. Negligence has always relation to the circumstances in which one is placed, and what an ordinarily prudent man would do or omit in such circumstances. Charnock v. Texas R. R. Co.,194 U.S. 432, *Page 598 48 L.Ed., 1057." 2 Roberts Federal Liabilities and Carriers (2d Ed.), (1929), sec. 811, pp. 1558-9. SeeTrust Co. v. R. R., 209 N.C. 304,183 S.E. 620; Hamilton v. R. R., 200 N.C. 543, 158 S.E. 75.
Speaking to the question in Ramsbottom v. R. R., 138 N.C. 39,50 S.E. 448, Hoke, J., delivering the opinion of the Court, said: "To establish actionable negligence, the question of contributory negligence being out of the case, the plaintiff is required to show by the greater weight of the testimony, first, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiffs under the circumstances in which they were placed, proper care being that degree of care which a prudent man should use under like circumstances and charged with like duty; and, second, that such negligent breach of duty was the proximate cause of the injury — a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed." This is still the law with the modification contained in Drumv. Miller, supra, and many other cases, "that it is not required that the particular injury should be foreseen, and it is sufficient if it could reasonably be contemplated that injury or harm might follow the wrongful act." Hudson v. R. R., 176 N.C. 488, 97 S.E. 388; Gore v.Wilmington, 194 N.C. 450, 140 S.E. 71.
In a case somewhat similar to the one at bar, Union Depot Co. v.Londoner, supra, it was held by the Supreme Court of Colorado, as stated in 2nd headnote, 33 L.R.A. (N.S.), 433 (which accurately digests the opinion): "A union depot company which relied upon train employees to direct passengers to their trains is liable for injury caused to a passenger's attendant by following the direction of such employee, which takes him into an unsafe place, where the danger is not obvious, although the one giving it was not in its immediate employ."
And in answer to the contention that the men who directed the plaintiff were not employees of the Union Depot Company, the Court said: "These men were the agency through which the appellant chose to perform its service of directing passengers to their trains, and they were the only agency which it employed in this case to perform that service. It availed itself and had the benefit of the service of these men, made them the agents or means for the performance of that particular part of its work which it had undertaken in the operation of its station, and it cannot now be permitted to say that Londoner had no right, so far as it was concerned, to follow the directions of the agency which it adopted and used as the means through which it gave directions."
Of course, to look at the case from the standpoint of the defendant's evidence, quite a different picture is presented. But the jury rejected *Page 599 
this view. They were instructed to find against the plaintiff, if the defendant's version of the matter were accepted, or believed to be true.
At the time of plaintiff's injury, she was employed as a saleslady in a Kinston department store, specializing in the sale of Victrola records, and was engaged in a contest with other salesmen of such records. The contest was being "staged by the manager, Mr. Madalia." Over objection, plaintiff was allowed to testify "from her knowledge of the sales of records in other stores," so far in the contest, "I was in the lead." The basis of the objection is, that plaintiff was here speaking of matters necessarily not of her own knowledge, and perforce violative of the rule against hearsay.S. v. Kluttz, 206 N.C. 726, 175 S.E. 81. The conclusion is a nonsequitur. The question propounded called for an answer within her own knowledge. There was no effort by cross-examination or otherwise to show that she was speaking from hearsay. To prevail on appeal, the party alleging error, not only has the laboring oar, but the tide is also against him. Error must be shown; it will not be presumed. Kelly v. Tea Co.,209 N.C. 839, 183 S.E. 291; Poindexter v. R. R., 201 N.C. 833,160 S.E. 767.
Touching the alleged excessiveness of the verdict, mentioned on argument and in brief, but apparently not specifically assigned as error below, it is perhaps enough to say that this is usually a matter resting in the sound discretion of the trial court, and is not reviewable on appeal, unless accompanied by some imputed error of law or legal inference in connection therewith. Hyatt v. McCoy, 194 N.C. 760, 140 S.E. 807; Parker v. R. R.,181 N.C. 95, 106 S.E. 755; Boney v. R. R., 145 N.C. 248,58 S.E. 1082; Norton v. R. R., 122 N.C. 910, 29 S.E. 886.
The remaining exceptions, 90 in number, are not of sufficient moment to work a new trial or to call for elaboration. They are not unusual in the trial of damage suits. Tilghman v. R. R., 171 N.C. 652, 89 S.E. 71. To consider them seriatim would be to extend the discussion to a "burdensome and intolerable length" (Willis v. New Bern, 191 N.C. 507,132 S.E. 286), and to end only in the application of old principles to the facts in hand. S. v. Lea, 203 N.C. 13, 164 S.E. 737.
DEFENDANT COAST LINE'S APPEAL.
One member of the Court, Schenck, J., being absent, and the remaining four being equally divided in opinion as to whether reversible error has been shown, particularly on the refusal to nonsuit as to the Coast Line, the judgment of the Superior Court, accordant with the usual practice in such cases, is affirmed and stands as the decision in the instant case, without becoming a precedent. Allen v. Ins. Co., post, 736, *Page 600 
and cited there cited. See Goodman v. Queen City Lines, 208 N.C. 323,180 S.E. 661; Keiger v. Utilities Co., 199 N.C. 786, 155 S.E. 875.
 The result, then, is: On plaintiff's appeal, Appeal dismissed. On defendant Station Company's appeal, No error. On defendant Coast Line's appeal, Affirmed.